Strafford,  }
Feb. 5, 1929. }

STANLEY M. BURNS, *Adm'r*, v. FRANCIS X. NOLETTE.

490

*Frank T. Powers* (of Maine) and *Hughes & Burns* (*Mr. Burns* orally), for the plaintiff.

*Mathews & Varney* (*Mr. Varney* orally), for the defendant.

PEASLEE, C. J. I. The plaintiff's motion for a directed. verdict raises the question whether the evidence was conclusive upon the

issue of title to the bank deposit. If there was any evidence upon which a verdict in favor of the defendant's title could be found there was no error in the denial of this motion.

"In order that the money, whether a deposit in a savings bank or a right to money in the hands of another, should pass as a present gift or trust, it must appear that a gift or trust was intended, and parol evidence is admissible to prove such intent." *Fellows* v. *Fellows*, 69 N. H. 339, 345.

The plaintiff's decedent, Mrs. Guilmette, caused the name of the defendant to be added to her own upon the deposit book in the Somersworth Savings Bank. It is conceded that this alone would not be sufficient to transfer to him any title to the funds. Reliance is placed upon other words and acts. When the change was made the treasurer of the bank explained to her that the effect would be practically to give the money to the defendant upon her death, and that she appeared to understand it. She was then suffering from an incurable disease, of which she died ten days later. Witnesses testified that when the transaction took place she said "She wanted the will, the book, to be put in their name and pay all the bills and the rest said in prayers for her soul." "She passed the bank book to Mr. Nolette, pay the bills and the rest to say masses." Two letters were written by the defendant after Mrs. Guilmette's death saying in substance that her wishes were for him to settle her affairs, as above indicated, and that she had his name on her bank book.

The parties and witnesses to the transaction were evidently persons of limited education and imperfect knowledge of the English language. What was said when the entry was made, and the witnesses' version thereof at the trial, are to be dealt with in view of these considerations. It is apparent that any one of several conclusions as to the intention of the decedent might be reached. The interest sought to be conferred appears to have been in the nature of a trust. It could be found to be a present interest or one to take effect only upon the death of the donor. If the latter was the design, it may have been made in contemplation of death from a present illness, with no purpose to transfer anything if death did not so ensue.

Some of these conclusions would warrant a verdict for the defendant, while others would not. The defendant's claim, that if a *donatio causa mortis* was intended it was well proved by the evidence of disinterested witnesses, is unsound. The statute provides an exclusive method for the judicial establishment of such gifts, by a petition to the judge of probate filed by the donee within sixty days after the

death of the donor. P. L. *c.* 297, *s.* 17. The superior court has no original jurisdiction of the subject. Such a gift, shown for the first time in a proceeding in that court, fails for lack of establishment in the statutory way. *Blazo* v. *Cochrane,* 71 N. H. 585.

The design may have been to transfer the account to the defendant at the decease of the donor, whenever the latter event should occur, the donor retaining sole control during her life. If this was the purpose, the plaintiff would be entitled to a verdict. Such an arrangement is testamentary in character, and void under the statute of wills. *Towle* v. *Wood,* 60 N. H. 434. This result follows if a trust was intended, as well as in the case of a direct gift. *Bartlett* v. *Remington,* 59 N. H. 364.

If the purpose of the transaction was to transfer a present and exclusive control of the fund to the defendant, by means of the addition of his name on the books of the depositor and of the bank and by a delivery to him of the deposit book, it was a completed gift *inter vivos,* and the defendant would prevail. *Marcy* v. *Amazeen,* 61 N. H. 131.

Thus far the case is free from any legal difficulties. But other facts could be found, which would present a more doubtful proposition. If the donor intended to pass to the defendant a present right to draw upon the account, retaining a like right to herself during life, was there a present completed gift? The test for a valid gift is said to be whether "his dominion and power to revoke are gone." ". . . a delivery of the subject-matter to the donee or to some person for him, so as to divest the title and possession of the donor, must be shown." *Smith* v. *Bank,* 64 N. H. 228, 231. In the same case it was said: "Just what it is necessary to do to pass the title to money through the intervention of a savings-bank the authorities do not agree in the different states, and often in the same state, and it would be a difficult task to reconcile them." *Ib.,* 232.

The question is, whether admitting another to an equal control, but without retaining a right in the donor to the funds withdrawn by the donee, is such a divesting of the donor's control as satisfies the test before stated. It seems to us that it is. The donee's present right is complete. He can draw from the account so long as funds remain. That right is what was given to him. It might subsequently prove valueless, if the donor withdrew the whole deposit. But for what it was worth it was a completed gift. No further act of the donor was required. No act of hers could defeat the right, although she might render it of no value. On the other hand, he could destroy her

reserved right by a like proceeding. The matter is well stated in a New Jersey case, not officially reported, but approved in *Schippers* v. *Kemphes*, 72 N. J. Eq. 948; *New Jersey Title &c. Co.* v. *Archibald*, 91 N. J. Eq. 82, and *Kaufman* v. *Edwards*, 92 N. J. Eq. 554. "The external form of the gift is the absolute conversion of the donor's property into a binding obligation of a third party, the performance of which according to its terms may upon certain contingencies benefit the donee. There is nothing, however, contingent about the gift. The gift is absolute. The right is vested beyond recall in the donee. It is a matter of no consequence that the right so vested may prove in the end to be of no pecuniary value." *Stevenson*, V. C., in *Dunn* v. *Houghton*, 51 Atl. Rep. 71, 78.

If the intent was to confer upon the defendant a present right to draw upon the fund, either without limitation or for and to the extent of described purposes, the transfer was valid, notwithstanding the donor retained a right to draw upon the fund at will. She thereby completely divested herself of the title transferred to the defendant. It did not take effect upon her death, and was not enlarged by that event. Such title as the defendant had, vested at the time of the entries upon the books. It was a present right and presently enjoyable. A delivery of what was not given was not essential to the completion of the gift.

Although the decedent's right terminated at her death, the defendant's title did not date from that event. Both his title and his right of present enjoyment existed before her death to the same extent that they did afterwards. The fact that there is a retention of life benefits for the donor does not render the gift incomplete. This is true even if the reservation is such that it may exhaust the entire fund or property. *Fellows* v. *Fellows*, 69 N. H. 339.

Upon the issue of control of the fund the case is stronger for the donee than *Smith* v. *Bank*, 64 N. H. 228. In that case a deposit was made by the donor in the name of his daughter with the intent to take the income for his own life and that of his wife, the donee to take the balance left thereafter. He retained the book and made withdrawals as intended. The decision in favor of the donee is put upon the ground that there was a present gift with a reservation of the income. But as the donor had and exercised the right to make withdrawals, without any limitation known to the bank, it seems evident that he could have withdrawn the whole.

In *Fernald* v. *Fernald*, 80 N. H. 75, 77, the deposit was made by the alleged donor, in the name of the claimant, the depositor retaining the

deposit book and control of the fund. It was said, ". . . it could be found that the depositor did intend to give the deposit to the plaintiff, but in the absence of such a finding the plaintiff does not establish any title to the fund."

The technical difficulty once thought to exist in holding that there is a present right in personal property, which another has the concurrent right to dispose of at will, is answered upon the theory that the objection "is the result of confounding the distinction between property and power." *Burleigh* v. *Clough*, 52 N. H. 267, 272. The *jus disponendi* is not title, but a mere power, which may or may not be exercised. The title of each of these payees was therefore good, being only subject to be substantially defeated by the exercise of the power possessed by the other. The title which is subject to such a power is a vested interest. *Ib.*, 276.

If it be said that the defendant did not have sufficient control of the fund, what is to be said of Mrs. Guilmette's dominion over the property? It was not greater than his. A present title, similar to a joint tenancy, was created by the transfer, with a right of survivorship to each. Added to this is a power, held by each, to substantially defeat the title of the other by withdrawal of the fund.

If a third party had deposited this money payable to the decedent and the defendant, or either of them, the balance to go to the survivor, and had given them the deposit book, no one would doubt the validity of the transaction. It is not perceived why its legal effect should be different because of the circumstance that the donor was one of the beneficiaries, made so by a retention of a part of the title. If such a gift to two completely divests the donor's title, a similar benefaction to one, retaining a like interest in the donor, must in like manner divest the giver of the part given.

The conclusion that a transfer of equal power to draw from the fund and appropriate the money withdrawn constitutes a perfected gift is in accord with the great weight of authority. *Kaufman* v. *Edwards*, 92 N. J. Eq. 554; *Kelly* v. *Beers*, 194 N. Y. 49; *Raferty* v. *Reilly*, 41 R. I. 47; *McLeod* v. *Bank*, 145 Minn. 299; *Mulfinger* v. *Mulfinger*, 114 Md. 463; *Negaunee Nat. Bank* v. *Le Beau*, 195 Mich. 502; *Kelly* v. *Woolsey*, 177 Cal. 325; *Miller* v. *Bank*, 71 Colo. 346; *Chippendale* v. *Bank*, 222 Mass. 499; *Blick* v. *Cockins*, 252 Pa. St. 56.

The cases relied upon by the plaintiff (*Maine Savings Bank* v. *Welch*, 121 Me. 49; *Howard* v. *Dingley*, 122 Me. 5; *Springvale Nat. Bank* v. *Ward*, 122 Me. 227) do not hold to the contrary. It is true that in each of those cases title in the donee was denied, upon one

ground or another, chiefly because the donor's intent to give a present benefaction was not shown by the evidence in the particular case. In *Maine Savings Bank* v. *Welch*, it was found as a fact that the intent was "to vest in him after her decease title to the money represented by her bank book," that she did not then consider "the funds as belonging to him even jointly with her." In *Howard* v. *Dingley*, the evidence was all to the effect that a testamentary gift was intended, and the question of the validity of one intended to take effect at once is not considered. In *Springvale Nat. Bank* v. *Ward*, the donor declared the intent to be "that you may and shall have it at my death." None of these cases seems to be out of harmony with the general rule before stated.

The case is distinguished from *Towle* v. *Wood*, 60 N. H. 434, in that in the present instance there was a transfer to the donee of a right to presently deal with the property, whereas in the earlier case the donor retained full control and an exclusive right to dispose of the fund. The decision there is put upon the distinction between a retention of sole control and a control common to both donor and donee.

If there can be such a thing as a joint holding of personal property, in the sense that there is a right of survivorship, no valid reason appears for denying the right of an owner of the complete title to create such an interest by a gift of a portion of the title. The rule in this state (induced by the statute as to real property) is that there is a presumption against joint interests in personalty; but the power to create such interests has long been recognized. *Pierce* v. *Baker*, 58 N. H. 531.

*Garland's Appeal*, 126 Me. 84, is relied upon to show that a joint interest in personalty, so as to confer a right of survivorship, can only be created when the four unities, required for joint tenancies in realty, are present. But the existence of these unities, so far as survivorship is involved, was required solely for the application of the rule that it would be presumed that survivorship was intended, although it was not expressed. The ideas upon this subject were fruits of the feudal system. "The estate in joint tenancy presents some of the most artificial rules of subtle distinctions of the ancient common law. It was once highly favored in England, doubtless for reasons that were feudal in their character and influential in their day, but which have long since ceased to operate." 7 R. C. L. 813.

It requires no argument to show that these ancient ideas ought not to be extended. The inference as to survivorship as to real estate has been abolished by statute in this state (P. L., c. 213, s. 17) and

in most other jurisdictions. 7 R. C. L. 813. A conveyance of personal property should be given the effect intended by the parties. As said by the Massachusetts court, the rights arising out of such a transaction as this are analogous to a joint tenancy, but are not to be so denominated because certain features of such an estate are lacking. *Marble* v. *Treasurer &c.*, 245 Mass. 504. It is not important that the interest created has no well settled legal name. *New Jersey Title &c. Co.* v. *Archibald*, 91 N. J. Eq. 82. It is enough that it was intended to be created, and that it violates no rule of statute or common law.

The conclusion in *Garland's Appeal, supra*, that a right of survivorship can be created only through the form of a joint tenancy, is not in accord with the English view of the common law. It is true that a right of survivorship is an incident of a joint tenancy only. In the absence of a statute changing the rule, it is implied from the creation of such an estate. But while the right is not so incident to an estate in common, it may nevertheless be annexed thereto. All that is required is that the intent to create it be expressed.

"It has been sometimes objected that this interpretation of the word 'survivor' cannot be adopted where there is a gift to several persons as tenants in common, not as joint tenants. But there is obviously a very great distinction between the limitation of survivorship that is involved in a gift of joint tenancy, and the limitation of the word 'survivor' which is annexed to a tenancy in common. The survivorship involved in an estate in joint tenancy is that which is capable of being defeated at the pleasure of the joint tenant, so that if, by alienation or otherwise, the joint tenancy is converted into a tenancy in common, the survivorship ceases; but when a gift to the 'survivor' is annexed to a tenancy in common and not to a joint tenancy, then the limitation takes effect by virtue of the gift, and not by virtue of something involved in a limitation of joint tenancy." *Taaffe* v. *Conmee*, 10 H. L. C. 64, 78. Such a provision creates life estates, with cross remainders. *Ib.*

If the intent to create a right of survivorship is expressed, it is to be given effect. Such expression could be found from the evidence here. The order to the bank to add the defendant's name to the deposit book recites that the purpose is to make the money payable to "the survivor of them as joint tenants." This order is evidence upon the issue of her intent. That it recites a purpose to create a joint tenancy, as well as a right of survivorship, does not render the latter object invalid if the provision as to joint tenancy is ineffective

because the four unities are not present. Survivorship without joint tenancy being permissible, and survivorship being the real object evidently in view, it is not to be defeated because the depositor, or the bank officials who advised her, mistook the technical meaning of the term joint tenancy and used it to describe a transaction to which it was inapplicable.

It follows from what has been said that the plaintiff's motion for a directed verdict was properly denied. Not only is there a failure to show the exceptional situation when a verdict may be ordered for the party having the burden of proof (*Williams* v. *Duston*, 79 N. H. 490, and cases cited), but, as before stated, the proof would warrant an affirmative finding that the decedent made a present completed gift to the defendant.

The gift, if made, was apparently designed to be in trust. If valid it would be a disposal of the entire fund and an answer to the plaintiff's demand for the whole or any part thereof. Whether the plaintiff could demand an accounting, is a question which is not presented and upon which no opinion is expressed.

II. Subject to exception, the defendant was permitted to testify that the plaintiff's decedent gave him the bank book to keep and that he kept it in his safe from that time. Two grounds are urged for sustaining the ruling involved. It is said that the deceased, if living, could not have contradicted the evidence. This position is plainly untenable. A part of the testimony related to a transaction in which she was said to be a principal actor. As to the subsequent custody of the book, the contention as to her lack of knowledge is based upon the erroneous assumption that the testimony is to be taken to be true. If in fact she kept the book, and had been living and had so testified at the trial, it would have flatly contradicted his statement that he had the book. Moreover, knowing that she had the book, she could have put her testimony in the positive form of a statement that he did not have it.

It is also argued that the evidence was immaterial, because there was a completed gift without delivery of the book. The by-laws of the bank provide that no one can make a withdrawal "without producing his original deposit book, or a duplicate book issued in accordance with the law." If it were conceded that notwithstanding the by-law such delivery was not an essential part of the transaction, the evidence would still be material as tending to show the intent of the decedent. *Marcy* v. *Amazeen*, 61 N. H. 131. It was a significant piece of evidence, and its erroneous admission cannot be excused

upon the ground that it was immaterial. Because of this error the verdict must be set aside. *Harriman* v. *Bunker*, 79 N. H. 127; *Bean* v. *Bean*, 71 N. H. 538.

New trial.

All concurred.