Rockingham, May 2, 1939. } No. 3077.

JAMES F. BLAISDELL & a Ex'rs v. EDNA YOUNG & a.

*Arthur E. Sewall* and *Thomas L. Cleaton* (*Mr. Sewall* orally), for the plaintiffs.

*Marvin, Peyser, Tucker & Marvin,* for Portsmouth Savings Bank.

*Thomas H. Simes* (orally), for Edna D. Young.

PAGE, J. The bank deposits in question stood in the decedent's name prior to July 24, 1936. On that date the decedent, then ill in a hospital, sent his housekeeper, the defendant Young, to the defendant bank with the request that one of his several deposit books there be transferred into their joint names, with rights of survivorship. In consequence of this request, Norman E. Rand, treasurer of the bank, went to the hospital, and in the presence of Mr. Blaisdell and Miss Young saw to the execution of the following papers: (1) a withdrawal receipt, signed by Mr. Blaisdell, for the sum of $8,761.26, being the amount theretofore credited to him upon the book; (2) duplicate receipts or signature cards, signed by Mr. Blaisdell and Miss Young respectively, for a new book for that sum issued in the names of both and "payable to either or the survivor." The new book was then delivered by Mr. Rand to Mr. Blaisdell, and by the latter to Miss Young.

The master found in connection with this delivery the following facts: "Mr. Rand explained to Mr. Blaisdell that the new book would entitle either one to withdraw the whole or any part of the deposit, and that in the event of the death of either, the survivor would be the owner of the money then on deposit. Mr. Blaisdell said that was precisely what he intended . . . . Mr. Rand called Miss Batchelder, a supervisor in the hospital, to witness the transaction. Her testimony confirms Mr. Rand's conversation with Mr. Blaisdell. She saw Mr. Blaisdell receive the book from Mr. Rand, concurrently with his advice to Mr. Blaisdell, and saw the latter hand it to Miss Young and heard him tell her to keep it. Mr. Rand's version is that Mr. Blaisdell told Miss Young to 'keep it with her things'. Miss Young has had the exclusive custody of the book ever since. No withdrawals were made from the account either before or after Mr. Blaisdell's death."

The plaintiffs took the position that, since the burden of proving title to the deposit was upon Miss Young (*New Hampshire &c. Bank* v. *McMullen*, 88 N. H. 123, 126), the defendants should open and close. The master ruled that the plaintiffs should take the opening and closing, and they excepted. The ruling raises no question of law unless it appears that injustice was done. *Seely* v. *Insurance Co.*, 73 N. H. 339, and cases cited. The only complaint made by the plaintiffs is that the ruling deprived them of the right to cross-examine Mr. Rand. There is a sufficient answer to this. While Mr. Rand was originally called by the plaintiffs, their counsel was permitted without objection to attempt to contradict the witness by the use of his deposition, and when the witness corrected the deposition, to press him with leading questions. No injustice is seen.

The plaintiffs requested the master to find that there was no intent upon the part of the decedent to convey any present title or interest to Miss Young, but that he did intend to give her the deposit only if she should survive him. The contrary finding must be sustained, since there was evidence to support it. Mr. Rand testified: "I asked him if he understood that if the account was so transferred that Miss Young if she had possession of the book would be able to make withdrawals or that he himself if he had possession of the book would be able to make withdrawals and that further upon the decease of either one the book would become the property of the survivor. He said that was precisely what he intended to do." The testimony disclosed facts which, if believed, would lay the foundation for a finding that there was intended such a joint power of disposal by the donor and donee as would be consistent with a valid gift *inter vivos*. *Burns* v. *Nolette*, 83 N. H. 489, 492.

The plaintiffs appear to argue that the master could not find as he did because Mr. Rand had said on deposition: "I told them what the effect of the transfer would be . . . that if Miss Young survived him the money would be hers, if he on the other hand survived Miss Young the money would be his." Mr. Rand admitted the statement in the deposition, but added "I think I'd like to correct it, it is my impression that I did in my remarks say that either person holding the book during the lifetime could make withdrawals, that would be part." The solving of the problem of contradiction, to the extent that there was one, was for the master. Moreover, Miss Batchelder testified as to the rights of the two parties to withdraw: "He said it was, either one could, had the right to, Miss Young could draw and Mr. Blaisdell, both could have the right to use the bank book."

As a subsidiary to his finding regarding the intent of the decedent, the master found that Mr. Blaisdell "told Mr. Rand that Miss Young had been very good to him during his illness,—which had been for some little time,—as well as to some other members of his family, (by which the referee finds that Mr. Blaisdell referred to his sister Julia), and that he wished to see that the money was hers." Upon objection, the master ruled that this finding might stand, and allowed the plaintiffs an exception. The finding was amply sustained by evidence, which was: "He said that Miss Young had been very good to him during his illness and he had been ill for some time and I gathered that she also had taken care of some other members of his family and he wished to see that that money was hers, give it to her." The plaintiffs moved to substitute a part of the language last quoted for the finding made, but omitting the words "give it to her" and substituting "in case he should die first." The last phrase comes from another page in Mr. Rand's testimony but it there followed words expressing the exact converse, usual in cases of such gifts, that if the decedent survived his co-tenant, the fund should be his. The motion was denied on the ground that the matter had already been covered. The exception following this captious objection is valueless.

The plaintiffs have briefed another complaint against the findings as to which they appear to have taken no exception. This relates to the finding that Miss Batchelder saw Mr. Blaisdell hand the book "to Miss Young and heard him tell her to keep it. Mr. Rand's version is that Mr. Blaisdell told Miss Young to 'keep it with her things'. Miss Young has had the exclusive custody of the book ever since." Even if an exception had been taken specifically to this finding, it would have been of no avail. Miss Batchelder's exact words were that he told Miss Young "to take it," "to keep it, take care of it," and they were capable of the interpretation placed upon them by the master. Mr. Rand testified as follows: "Q. And that after that explanation [as to the effect of the transaction] Mr. Blaisdell delivered the book to Miss Young and told her to put it with her things? A. That is correct." Later, upon examination by counsel for the plaintiffs, Mr. Rand said "it is difficult to remember just exactly but that certainly was my impression . . . . I couldn't say whether he added those words or not," but the impression was nevertheless testified to, and it is evident from the whole of Mr. Rand's testimony that he knew precisely what was going on and was guiding Mr. Blaisdell to make a sound gift executed by a sufficient delivery. Whatever might have been the memory of the witness as to exact words, the

explanation he made of the effect of the delivery was perfectly clear, and the donor was equally clear in expressing his intention to make such delivery as would give the donee a legal title, reserving in the donor only the usual *jus disponendi*.

The next objection to the findings was followed by a seasonable exception. It may be coupled with an exception to the denial of a request for a finding. The request was that the conditions imposed by Mr. Blaisdell "were inconsistent with the creation of a present unconditional joint estate" in that he told Mr. Rand "that Miss Young had been very good to him in his illness and to some other members of his family and wanted her to have the money in case he should die first," and that Mrs. Martha Winn testified that Mr. Blaisdell later told her that "he wanted Edna Young to have the money if he should die first, and that Edna Young was not to touch the money—draw upon it." As to the words "in case he should die first," no inconsistency is perceived. It is of the essence of the interest created that it is finally defined, though not enlarged, by the state of the fund at the first death of a joint tenant. *Burns* v. *Nolette, supra,* 492, 493. The intention of the donor that if he should survive the donee he should take all of the fund then left is consistent with a valid gift.

Mrs. Winn testified that just after Mr. Blaisdell came home from the hospital he told her that "he had the book made in a joint account and he gave the book to Edna," that "it was part pay for her help taking care of his two sisters . . . and for what she was doing for him at the present time and what was ahead to come . . . . He told me the book was made to Edna and, I mean in a joint account, Miss Young and he in a joint account and either one, either survivor was to have what was on the book." Then followed a long cross-examination in behalf of the plaintiffs in which Mrs. Winn first denied that anything was said about Miss Young's disability to draw from the book. Asked if she had not made a prior statement that nothing was to be drawn until the donor was dead, she said that she had been misunderstood and confused. Then she seemed to admit that Mr. Blaisdell said the money was not to be drawn, only immediately to deny it. "I think you put those words in my mouth."

Concerning this, the master found: "There was some rather uncertain testimony from Mrs. Winn to the effect that Mr. Blaisdell said to her that he told Miss Young not to draw anything from the bank book which stood in their names. Some time prior to his illness he had taken Miss Young into the Portsmouth Savings Bank

and introduced her to the Treasurer, Mr. Rand, and told him that during his periods of illness he might not be able to come to the bank personally to do business, and he wanted to make sure that she had authority to withdraw from any one of his several accounts. Mr. Rand gave such directions and made such notations on the records of his deposits as would carry the wishes of Mr. Blaisdell into effect. If he did make such a remark to Mrs. Winn, it seems as probable as otherwise in view of Miss Young's authority to draw from his other accounts in that bank, that he was merely cautioning her to be sure that she was withdrawing from his other accounts if she had occasion to make a withdrawal, rather than that he intended to place a limitation on a right which he had expressly given to her, moved by a high sense of gratitude."

To this finding, the plaintiffs excepted. The exception is overruled, since the finding was a reasonable inference from the evidence, despite the fact that Miss Young was paid regular wages and was also substantially remembered in Mr. Blaisdell's will. Similarly the exception to the denial of the request is overruled. To the further finding that Mr. Blaisdell "imposed no conditions or restrictions upon Miss Young's withdrawal of the funds," there was no exception. After the findings were filed, the plaintiffs again requested that a finding be made that Mr. Blaisdell told Mrs. Winn that the money was to go to the survivor; that he wanted Miss Young to have it when he died; that nothing was to be drawn on the book until his death. The master properly noted "Already covered by findings." All the grounds of this request have been fully considered in this opinion.

The third request for findings, that there was no intent to convey any title to Miss Young, but an intent that no withdrawals should be made from this deposit during the donor's lifetime raises no question not already considered.

*Exceptions overruled.*

All concurred.