(No. 26311.—

JENNIE DUNCAN *et al.* Appellants, *vs.* WILLIAM T. SUHY, Admr., *et al.* Appellees.—JESSIE SIBERT *et al.* Appellants, *vs.* WILLIAM T. SUHY, Admr., Appellee.

*Opinion filed November 18, 1941.*

BELLATTI, ARNOLD & BELLATTI, for appellants.

VAUGHT, FOREMAN & CLEARY, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This appeal brings two causes, consolidated for purpose of hearing in the circuit court of Morgan county. The appeal is from an order entered in each case dismissing the petition filed therein. One of these suits was filed in the circuit court of Morgan county for partition of certain real estate alleged in the petition to be owned in common by the estate of Viola Suhy, now deceased, and William T. Suhy, her husband, appellee. This suit was filed by Jennie Duncan and others, heirs of Viola Suhy, appellants here.

The other cause was a petition filed in the county court of Morgan county by Jessie Sibert and others, appellants, heirs of Viola Suhy, asking that the court declare that the petitioners are entitled to all the personal property belonging to the estate of Viola Suhy. The county court, on motion of appellee as administrator of the estate of Viola Suhy, dismissed this petition and appellants appealed to the circuit court where the partition suit was pending, and the two causes were there consolidated for hearing. The circuit court, on motion, dismissed the complaint for partition and also the petition, filed in the county court, before it on appeal.

It is apparent from the petition filed in the county court and later dismissed by the circuit court, that it had to do only with personal property. No real estate was involved and therefore no freehold was put in issue to give this court jurisdiction on direct appeal. No other jurisdictional question was presented and passed upon. While the causes were consolidated in the circuit court for purpose of hearing, the orders and judgments are separate and in separate causes. This court does not have jurisdiction of the appeal from the order of the circuit court dismissing the petition filed in the county court and that cause is transferred to the Appellate Court for the Third District.

The correctness of the order and decree of the circuit court in the partition case depends largely upon the construction and application of a certain post-nuptial agreement entered into between Viola Suhy and her husband, the appellee, who is sued individually and as administrator of the estate of Viola Suhy.

The third amended complaint in the partition proceeding consisted of four counts, each setting up the agreement and the consideration therefor. The property involved here was held by appellee and Viola Suhy, his wife, in joint tenancy prior to the agreement, and appellants contend here that the agreement had the effect of severing the joint tenancy and creating a tenancy in common, thus vest-

ing an undivided interest in the land in appellants. Appellee's answer to this contention is that the agreement was not sufficient to sever the existing joint tenancy in which the title to the real estate was held, and this constitutes the first question here presented in the partition suit.

The preamble to the agreement recited that the parties were husband and wife; that certain apparently irreconcilable mutual differences have arisen between them and they were then living separate and apart and that they desired to effect and adjust their mutual property and other rights and the husband desired to make suitable provision for the care and support of his wife. The agreement then recited that they make payments, conveyances, covenants, agreements and releases, each in consideration of the payments, conveyances, covenants, agreements and releases made by the other, as follows:

"1. Both parties to this agreement, in consideration of the covenants and agreements of each other, agree that each party shall retain his or her one-half interest in the home property located at 1611 Mound Ave., Jacksonville, Morgan county, Illinois, and if a sale of said property shall be agreed upon by both parties, the net proceeds * * * shall be divided equally between these parties; and in the case of rental of said property unfurnished, the rental received * * * shall be divided equally between the parties; in the event said property is rented furnished with furniture belonging to the party of the first part [wife] then after paying necessary expenses to said house, the net rental shall be divided 60% to the party of the first part [wife] and 40% to the party of the second part."

Clauses 2 to 7, inclusive, pertain only to personal property rights of the parties.

Clause 8 is as follows: "For and in consideration of the premises, the said party of the first part hereby releases, relinquishes, quit-claims, sells, assigns and conveys all her right, title and interest which said first party as wife of said second party under the laws of the State of

Illinois, may have acquired or which she may hereafter acquire during the life time of said second party or at his death, by reason of the marriage that now subsists between said parties hereto, in and to all the property, both real and personal, which now is and hereafter during the life time or at the death of said second party may be owned by said second party, William T. Suhy. And for and in consideration of the above release, relinquishment and conveyance by said first party to said second party, said party of the second part hereby releases, relinquishes, quit-claims, sells, assigns and conveys all his rights, title and interest which said second party, as the husband of said first party, under the laws of the State of Illinois, may have acquired or which he may hereafter acquire during the life time of said first party or at her death, by reason of the said marriage that now subsists between said parties hereto, in and to all the property, both personal and real, which now is or hereafter during the life time or at the death of said first party may be owned by first party, Viola Suhy. This agreement and conveyance is mutually intended to be, and the same is hereby, expressly made and intended by each of the parties hereto as a mutual release, relinquishment and conveyance of all rights, title and interest that may now be or shall hereafter be during the life time of, at the death of either of said parties hereto, acquired by the other, by virtue of the said marriage that now subsists between the said parties hereto under the laws of the State of Illinois, in and to all the property, both real and personal, of the other, respectively, and of all mutual right of support; and it is the intention of the parties hereto to mutually release and waive all benefit of the laws of the State of Illinois, relating to husband and wife, dower, homestead, mutual support, etc., and forever bar each other, respectively, from any action to recover any separate maintenance or support or any interest that may now be or shall hereafter during the life time or at the death of either of said

parties hereto to be acquired by the other in the property, both real and personal, of the other, respectively."

The property involved here was referred to in the agreement as the "home property" located at 1611 Mound avenue, Jacksonville. Was the effect of this agreement to sever the joint tenancy?

Tiffany on Real Property, third edition, section 418, states that the nature of a joint tenancy has been described as follows: "In the case of a joint tenancy all the tenants have together, in the theory of the law, but one estate in the land and this estate each joint tenant owns conjointly with the other tenants. All the joint tenants, whether only two or more than two, constitute for some purposes but one tenant, or, as it has been more specifically stated, each joint tenant is regarded as the tenant of the whole for purposes of tenure and survivorship while for purposes of alienation and forfeiture each has an undivided share only.

"In a joint tenancy there are said by Blackstone to be four unities, to-wit, unity of interest, unity of title, unity of time, and unity of possession, or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession."

"Since joint tenants in theory have together but one estate, they both necessarily have the same amount of interest."

The rule is that an agreement between joint tenants to hold as tenants in common will sever an existing joint tenancy and such agreement may be inferred from the manner in which the parties deal with the property. Thus a joint tenancy may be terminated by mutual agreement or by any conduct or course of dealing sufficient to indicate that all parties have mutually treated their interests as belonging to them in common. 2 Tiffany on Real Property, p. 210, sec. 425; 33 Corpus Juris, 909, sec. 11, and cases cited to that text.

One of the essential characteristics of a joint tenancy is unity of interest which requires that the shares of the joint tenants be equal, subject, however, to the right of either to show, and receive credit on sale for, a disproportionate contribution to the purchase price. *People* v. *Varel,* 351 Ill. 96.

Clause 1 of the agreement refers to the property involved here, as the "home place" in Jacksonville. It is the only clause of the agreement that refers to property held in joint tenancy. It will be observed that this clause contains no provision to convey the property or any part thereof to either of the parties, nor to sell the same, but provides what shall be done in case of rental of the property or its sale. There is nothing in the language of that clause which can be construed as an agreement to sever the joint tenancy. Clause 8 does not mention this property nor any held in joint tenancy, and relinquishes the rights of each arising under the marriage laws and relation.

The statement that each party shall retain his or her half interest in the "home place" and in case of sale by agreement of both parties, the net proceeds shall be divided equally, does no more than state the shares of each party in the property, and that those shares are to remain equal. It is the rule in a case of this kind, as appellants admit, that the right of survivorship of one joint tenant does not arise out of the marriage relationship. Appellants argue, however, that the declared purpose of the conveyance was not limited merely to an adjustment growing out of the marriage relationship but, as shown by the preamble, the parties desired to effect and adjust their mutual property rights, and that the barring of right of survivorship of joint tenants is an adjustment of mutual property rights, and they say that it would be unlikely that the agreement which barred each from obtaining any beneficial interest in the property of the other by the death of the other would leave the real estate held in joint tenancy undisturbed.

We are unable to agree with the contention of appellants that the words of the agreement "his or her half interest" were so used as to indicate an intention to create a tenancy in common and to sever the existing joint tenancy. Such language, as we have said, relates to the interest each then had and not to an intent to sever those interests. It will be observed that there was no reference to a transfer of any interest in the real estate from one to the other, but the agreement did provide that the appellee transferred title to certain personal property to the deceased and she, in turn, transferred title to certain personal property to him. The agreement also provides that as to any property which either might thereafter acquire, and in which, under the law, the other would acquire an interest by reason of their marriage relation, each agreed to and did reliquish and assign to the other any such interest; but the parties also agreed that each should retain whatever interest he or she had in this real estate. The provision that in case the property was sold each should share equally in the proceeds, merely accords with the rights of each on the sale of property held in joint tenancy.

Appellants urge that the contract here is void as against public policy. If this be true appellants would not be aided, since if no contract existed no severance of joint tenancy could be claimed. We therefore do not pass upon that contention.

We are of the opinion that the agreement was not sufficient to sever the joint tenancy in the real estate and the chancellor did not err in dismissing appellants' complaint which sought partition. As this disposes of the appeal in the partition matter, no other contentions need be considered.

The order and decree of the circuit court dismissing the petition for partition is affirmed.

*Order and decree in partition proceeding affirmed;*
*other cause transferred.*