Hillsborough,
No. 5262.

JOHN L. BOULEY & a. v. NASHUA & a.

Argued November 4, 1964.
Decided November 30, 1964.

*Clancy & O'Neill* (*Mr. Frank B. Clancy* orally), for the plaintiffs.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the defendant Bouchard.

*Leo R. Lesieur*, for the city of Nashua, furnished no brief.

DUNCAN, J. This is a bill in equity by husband and wife as owners of a tract of land on Sargent Avenue in Nashua, seeking to enjoin the defendant Bouchard as owner of an adjoining tract from erecting "any building other than one dwelling house" upon the adjoining tract owned by him. The defendant city of Nashua is the common predecessor in title of the plaintiffs and the defendant. All questions presented were transferred without ruling by the Presiding Justice (*Leahy*, C.J.).

Sargent Avenue in Nashua runs generally west to east between Amherst Street on the west and Manchester Street on the

east, a distance of over 2,000 feet. It borders the northerly side of a large tract of land owned by the city known as "North Common," which is used for a variety of public school and recreational purposes.

Some ninety years ago the city, as owner of the land north of Sargent Avenue, divided it into nineteen lots of land, most of which had a uniform frontage of 100 feet on Sargent Avenue and a depth of 120 feet extending northerly. A tract of land now owned by the defendant, at the westerly end of the street, bordering Amherst Street, was originally designated Lot No. 1; and the adjoining lot now owned by the plaintiffs, as Lot No. 2. Lot No. 1 had a frontage of 100 feet on Sargent Avenue, a depth of 120 feet, and because of the angle at which Sargent Avenue intersects Amherst Street, a rear or northerly line of 159 1/2 feet. Owing to later abandonment of a proposed street along the north boundary, the lot was enlarged by the addition of a strip approximately 16 feet wide on the north side so that the defendant's entire lot is now 136 feet deep, with a frontage on Amherst Street of 151 feet. The strip at the northerly side of the lot was conveyed by the city without restrictions.

The plaintiffs acquired title to Lot No. 2 in August 1956 subject to "the restriction that the grantees, their heirs and assigns, shall not erect or permit to be erected any structure on said premises within twenty-five (25) feet of the established line of Sargents Avenue." Their property consists of a substantial dwelling house and barn erected sometime before 1912.

The defendant and her late husband as joint tenants had previously acquired title to Lot No. 1 in April 1954. The conveyance to them was likewise subject to a "restriction" that "no building or structure of any kind" should be erected within twenty-five feet of Sargent Avenue. Lot No. 1 is a vacant lot, upon which for more than forty years there have been billboards facing toward Amherst Street along the northerly boundary of the lot. The lot is presently screened from the plaintiffs' land by a row of trees and bushes. The defendant proposes to sell the premises for filling station use under a variance granted by the Nashua zoning board. See *Bouley* v. *Nashua*, 106 N. H. 79.

The restrictions which the plaintiffs seek to enforce were originally contained in a deed of three lots on Sargent Avenue given under date of July 28, 1873 by the city of Nashua to a predecessor in title of the defendant. This deed was upon condition,

among other things, "that no more than one dwelling house shall be built on each lot," and provided that "in case of violation of any of the foregoing conditions on the part of the grantee or his heirs or assigns at any time hereafter this conveyance shall become void [and] . . . forfeited . . . to the City of Nashua to whom in such case the same shall revert."

The evidence disclosed that commencing in 1871 the city of Nashua, as owner of the land north of Sargent Avenue, undertook to divide it into 19 lots fronting on the Avenue, across from the North Common. The first conveyance was of Lot No. 18 at the easterly end of the Avenue, separated from Manchester Street by Lot No. 19. The deed of Lot No. 18 dated October 18, 1871 referred to a "plan of said Lots drawn and made by H. F. Richmond in August 1871," and recited that "reference may be had to said plan for a more definite description of the premises." The lot was conveyed upon condition that a dwelling house not less than two stories high and costing not less than $2,500 should be erected within three years, that such dwelling should be set back not less than 25 feet from the front line, and that "there shall not be built upon said lot but one dwelling house and in case of a violation of any of the foregoing conditions the premises shall revert to said City of Nashua."

The plan referred to was a plan on file in the office of the city clerk, described in a later deed in 1956 as "No. 68 in a book of plans of streets and sewers on file in the office of the City Clerk."

The next conveyances by the city, after that of Lot No. 18, were of lots Nos. 5, 7, 9, 13 and 15, all under date of October 14, 1872. The four deeds conveying these lots described them as "North Common land" and as numbered lots "on the plan," without identifying the plan. These deeds contained conditions of the sort contained in the deed to Lot No. 18, except that the restriction against erection of more than one dwelling house was as follows: "and no more *or other* than one dwelling house shall be erected or maintained on each of said lots." (Emphasis supplied).

The next conveyance by the city was the deed to the defendant's predecessor, Otis, under date of July 28, 1873. This deed conveyed Lots 1, 3 and 17, upon similar conditions with respect to erection of a dwelling, and a condition that "no more than one dwelling house shall be built on each lot."

Lot No. 8 was conveyed by the city in 1875, and no other lots were thereafter sold until 1887, when Lots 2, 4, 10, 11, 12, 16 and 19 were sold. The seven deeds by which lots were conveyed in 1875 and 1887 imposed restrictions phrased in substantially the language used in the four deeds of October 14, 1872, including the language: "no more nor other than one dwelling house shall be erected."

The last two of the 19 lots, consisting of Lots No. 6 and 14, were conveyed by the city in July 1937, when conditions uniform with those of the 1872 deeds were again imposed.

In the meantime by deed dated April 5, 1926 to a predecessor in title of the defendant the city released Lot No. 1 from all restrictions except that of the 25-foot set back. On December 24, 1926 by deed to a predecessor of the plaintiffs the restrictions upon Lot No. 2 were similarly released. Similar releases as to four other lots were granted by the city in 1941 and 1962.

These and other facts established by testimony and agreement present the issue of whether the plaintiffs are entitled in equity to enforce the condition contained in the 1873 deed from the city to Otis that "no more than one dwelling house shall be built" on Lot No. 1 which is now owned by the defendant. The plaintiffs contend that since the city, as original common owner conveyed the series of lots according to a plan of lots on Sargent Avenue, by deeds each with similar restrictions, the parties to these transactions must be deemed to have intended to create negative reciprocal restrictions enforceable by any lot owner against any other lot owner. The defendant takes the position that the restrictions were intended to benefit the city of Nashua only, for the protection of its land to the south of Sargent Avenue, and that the restrictions imposed by the deed of 1873 on Lot No. 1 did not in any way preclude erection of a commercial structure. Both parties rely upon *Nashua Hospital* v. *Gage*, 85 N. H. 335, to support their positions.

The law is well settled in this jurisdiction that building restrictions inserted in deeds can create enforceable equitable servitudes. *Nashua Hospital* v. *Gage, supra; Johnson* v. *Shaw*, 101 N. H. 182, 186-187. If an original owner has adopted a general scheme for development or subdivision of a certain tract or parcel of land and has inserted in his deeds of lots therefrom uniform restrictions intended by him and by the purchasers to be imposed on each lot for the benefit of all other lots included in the general plan, reciprocal servitudes are thereby created on

all the lots in the development. *Nashua Hospital* v. *Gage*, 85 N. H. 335, 339; *Sun Valley &c. Co.* v. *Watts*, 98 N. H. 428, 431; II American Law of Property, ss. 9.25-9.30; 5 Powell, Real Property, s. 679. The existence of such an intent can be ascertained from the language of the instruments, the conduct of the parties, and the surrounding circumstances. *Nashua Hospital* v. *Gage, supra*, 339, 340; II American Law of Property, s. 9.29, p. 417; 5 Powell, Real Property, s. 679, *supra, p.* 188.

The plaintiffs point out the city did in fact convey the Sargent Avenue lots by deeds, many of which refer to a plan of lots. Although this plan was not clearly identified in many of the deeds, was not recorded in the registry of deeds, and bore no statement of the restrictions stated in the deeds, it was made a matter of public record in the office of the city clerk. Furthermore the restrictions stated in the various deeds were substantially uniform in their provisions, and so far as appears were substantially complied with by the several grantees in that the residences erected were two-story buildings set back at least 25 feet from the avenue. So far as appears, the only commercial structures erected on any lot were the billboards on Lot No. 1. However barns and garages were erected upon several lots, including that now owned by the plaintiffs. There is no evidence that any lot owner ever objected to any use made, until now.

In *Nashua Hospital* v. *Gage*, 85 N. H. 335, 340, it was said: "The case for the defendants stands upon the conveyances, unaided by extrinsic evidence. These contain no reference to any reciprocal rights conferred upon the several grantees. There is a condition in favor of the grantor, but no mention of any other limitation upon the title conveyed. If the existence of reciprocal rights is to be implied here, the inference must be drawn from the fact that all the deeds contain similar conditions reserved to the grantor. The cases wherein this question has received consideration hold that the inference cannot be drawn from that fact alone." See also, *Sun Valley &c. Co.* v. *Watts*, 98 N. H. 428, 432; *Duhamel* v. *Prescott*, 101 N. H. 108, 110-111.

The law so stated is controlling of the present case. The city, as original grantor, may well have imposed restrictions for the benefit of its land south of Sargent Avenue. See *Hendlin* v. *Fairmount Constr. Co.*, 8 N. J. Super. 310, 334-336. Its sale of lots was not the ordinary real estate "development," since

it retained reversionary rights in the event of any breach of condition. While the various restrictions were made binding upon the heirs and assigns of the several grantees, the grantees entered into no covenants to observe them, and the city's deeds contained no undertaking by it to impose like restrictions upon other lots which it continued to own. ". . . if there had been an agreement that giving [the] deed . . . also imposed upon [the grantor] an obligation as to his remaining land, one would naturally expect that it would have been expressed rather than left to dubious inference." *Nashua Hospital* v. *Gage, supra,* 341. *Cf. Landell* v. *Hamilton,* 175 Pa. 327, 332.

There is no evidence of any representation by the city, by means of advertisement or otherwise (see *Cheatham* v. *Taylor,* 148 Va. 26, 46, 47; *White* v. *LaDue & Fitch, Inc.,* 303 N. Y. 122) that the restrictions were for the benefit of the other lot owners as well as the city itself. While the plan was incorporated in the first deed by reference, it thereafter assumed less and less importance. The city eventually released all restrictions but one, as to at least six lots, including those now owned by the plaintiffs and by the defendant.

The evidence thus fails to sustain the plaintiffs' burden of showing an intention to create reciprocal restrictions which should be enforceable by grantees of the city. It follows that the plaintiffs are not entitled to enforce any restriction which now exists as to Lot No. 1 owned by the defendant.

*Bill dismissed.*

All concurred.