Hillsborough,
No. 6404.

THEODOSIOS MAMALIS, ADMINISTRATOR OF ESTATE:

OF LOUIS D. BORNOVAS, *& a.*

*v.*

JULIE BORNOVAS.

November 30, 1972.

*James A. Connor,* by brief and orally, for the plaintiff.

*Broderick, Craig & Costakis (Mr. Arthur J. Costakis* orally) for the defendant.

KENISON, C.J. The primary issue presented by this case is whether a divorce decree incorporating a stipulation equally dividing the equity in a homestead between husband and wife severed their mutual rights of survivorship and thus transformed their joint tenancy into a tenancy in common. A secondary issue concerns the modification of a property division decree based upon the conduct of the parties and subsequent death of one of the spouses shortly after the divorce.

These issues were raised by the parties in a landlord-tenant action brought by plaintiff under RSA ch. 540 in Manchester District Court and transferred to the superior court to recover possession of certain real property and were reserved and transferred on an agreed statement of facts. *Dunfey,* J., ruled that the defendant wife as joint tenant succeeded to the entire property upon her former husband's death shortly after the divorce, but that the husband's estate was entitled to one-half of the equity in the house pursuant to the stipulation between the parties which had been incorporated and merged into the divorce decree.

The stipulated facts show that the plaintiff's intestate, Louis Bornovas, and the defendant, Julie Bornovas, were formerly husband and wife residing together at the subject property as their homestead which they owned subject to a mortgage

as joint tenants. In contemplation of a divorce, the parties entered into a stipulation providing as follows for the equal division of the property: "(2) That the equity in their real estate . . . shall be equally divided between said parties hereto and the payment of the [wife's] share shall be paid to her either through a loan or by sale of said real estate. In either event, said payment shall either be made or initiated within thirty (30) days from the date of hearing. (3) That the household property and effects contained therein . . . shall be awarded to the [husband]." The decree of divorce incorporating this stipulation was effective March 4, 1969. The parties, however, continued residing together in an improved domestic atmosphere until the husband's death on June 11, 1969. Shortly after the divorce the husband had made two unsuccessful attempts to secure a loan in an effort to comply with the divorce decree and stipulation.

The plaintiff contends that the divorce and stipulation effected the termination of the joint tenancy, with the result that the wife had no right of survivorship and therefore did not succeed to her husband's share upon his death. Plaintiff alternatively urges that the husband obtained by the stipulation and decree a vested right in one-half of the equity to the property, as ruled by the trial court. The defendant, on the other hand, contends that the superior court ruled correctly that the joint tenancy status survived the divorce, so that full title to the property vested in her upon the death of her former husband. Defendant apparently also seeks a ruling that the property settlement and decree of March 4, 1969, awarding the husband one-half of the equity in the house were negated by the subsequent conduct and intentions of the parties in continuing to reside together in an effort to salvage the relationship, and by the ex-husband's death.

In determining whether an act of a joint tenant is sufficient to terminate or "sever" a joint tenancy, the courts have historically resolved the question upon an analysis of whether the act destroyed one of the essential four unities of time, title, interest or possession. *E.g., Wentworth* v. *Remick,* 47 N.H. 226 (1866); *see* 2 Blackstone's Commentaries ch. 12, at 363 (Chase ed. 1914); 4 Thompson, Real Property *ss.* 1780-81 (1961 rev. ed); 2 Tiffany, Real Property *s.* 425, at 208 (3d ed. 1939).

Beginning with several eighteenth and nineteenth century English decisions, however, the idea began to emerge that the termination of a joint tenancy should be controlled by the parties' intention as manifested by some overt act or express agreement (Annot., 64 A.L.R.2d 918, 941-45 (1959)), and this view appears to be a prevailing trend in the decisions. *McDonald* v. *Morely*, 15 Cal. 2d 409, 101 P.2d 690 (1940); *Duncan* v. *Suhy*, 378 Ill. 104, 37 N.E.2d 826 (1941); *Nichols* v. *Nichols*, 43 Wis. 2d 346, 168 N.W.2d 876 (1969); *see* Swenson and Degnan, Severance of Joint Tenancies, 38 Minn. L. Rev. 466, 485-87 (1954). "'The survivorship involved in an estate in joint tenancy is that which is capable of being defeated at the pleasure of the joint tenant, so that if . . . the joint tenancy is converted into a tenancy in common, the survivorship ceases; . . . . *Taaffe* v. *Conmee*, 10 H. L. C. 64, 78.'" *Burns* v. *Nolette*, 83 N.H. 489, 496, 144 A. 848, 852 (1929). *See generally* Annot., 64 A.L.R.2d 918 (1959).

The question of whether and to what extent property rights have been transferred from one person to another generally is resolved upon a determination of the transferor's intent. *See, e.g., In re Frolich Estate*, 112 N.H. 320, 295 A.2d 448 (1972); *Bouley* v. *Nashua*, 106 N.H. 74, 77-78, 205 A.2d 34, 36-37 (1964); 6 Powell, Real Property para. 877, at 159-60 (1971 rev. ed.); Restatement of Property *ss.* 11(1) and 12(1) (1936). So we have held that the determination of whether a joint tenancy has been created is primarily a question of whether the grantor has effectively expressed such an intent. *In re Allaire Estate*, 103 N.H. 318, 171 A.2d 191 (1961); *Therrien* v. *Therrien*, 94 N.H. 66, 46 A.2d 538 (1946). Further, RSA 477:18 provides in pertinent part that there must be "a clear expression of intention to create a joint tenancy."

We can see no reason in policy or logic to adopt a different standard for the termination of a joint tenancy than obtains for its creation. When joint tenants clearly express an intention to terminate their mutual rights of survivorship by some instrument of record, such as the written and signed stipulation of the parties filed in the divorce proceedings herein, and the decree of the court thereon, that intention ought to be given effect. Given the existing forms of property cotenancy, the least confusing way to accomplish this result is

to rule that the joint tenancy has been transformed into a tenancy in common. This is in fact what the courts have traditionally done when one of the four unities was found to have been destroyed by some act or agreement of the parties. 4A Powell, *supra* para. 618, at 672-74; 2 Tiffany, *supra s.* 425, at 208-09; 4 Thompson, Real Property *s.* 1777, at 19 (1961 rev. ed). We believe, however, that a proper expression of intention by the parties ought to replace the historical unity rule in determining whether a joint tenancy has been terminated since "the four unities have nothing to do with the question." Swenson and Degnan, *supra* at 504; *see Therrien* v. *Therrien supra.* "It requires no argument to show that these ancient ideas ought not to be extended." *Burns* v. *Nolette,* 83 N.H. 489, 495, 144 A. 848, 851-52 (1929). "[T]here is a strong tendency on the part of the courts now to ignore the four unities requirement." 4 Thompson, *supra* at 19-20. "Better still would be a complete break with the past in requiring observance of the four unities rule. This would be a more forthright and direct method . . . ." Basye, Clearing Land Titles *s.* 278, at 591 (2d ed. 1970).

Most of the few courts which have considered the question have held that a divorce alone is insufficient to terminate a joint tenancy. *E.g., Summerlin* v. *Bowden,* 286 Ala. 391, 240 So.2d 356 (1970); *Nichols* v. *Nichols,* 43 Wis. 2d 346, 168 N.W.2d 876 (1969); *Witzel* v. *Witzel,* 386 P.2d 103 (Wyo. 1963). *But see Carson* v. *Ellis,* 186 Kan. 112, 348 P.2d 807 (1960). *See generally* 64 A.L.R.2d 918, 954 (1959). The few decisions which attempt to rationalize this rule ordinarily predicate their holdings upon the proposition that since a divorce between joint tenants does not destroy any of the four unities, it simply cannot sever the joint tenancy. This reasoning is inadequate among other reasons because it fails to recognize that husbands and wives ordinarily take title to their homestead as joint tenants because they are married, intend to remain so, and intend that in the event of the death of one of them the survivor should take full title to the homestead in the capacity of surviving spouse. When the marriage is dissolved, the basic condition and consideration involved in the original decision to create the mutual survivorship rights — the marriage itself — is expressly, actively, and publicly

terminated. The majority of persons severing their marital relationship very probably intend at least intuitively to simultaneously separate their respective property interests. A rule which would pass to the survivor after a divorce the half of the property belonging to the deceased ex-spouse would often vest the bulk of the estate in the survivor and would ordinarily be in direct contravention of the intent of the deceased. Casner and Leach, Cases and Text on Property 289 n.16 (1969). At least two states have recognized the anomaly of this result by enacting legislation providing that joint tenancies are converted into tenancies in common by a divorce in the absence of a stipulation or decree to the contrary. Ind. Stat. Ann. s. 3-1218 (Burns 1968); Mich. Comp. Laws Ann. s. 552.102 (1967).

In addition to obtaining a divorce, the parties in this case stipulated and the court decreed that their equity in the real estate should be equally divided, that the husband should promptly pay to the wife her share of the equity, and by implication that the complete ownership and exclusive possession of the property should thereafter pass to the husband. This agreement and decree certainly contemplated the absolute division of the joint ownership and was totally inconsistent with the prior survivorship rights of the parties. *McDonald* v. *Morley*, 15 Cal. 2d 409, 101 P.2d 690 (1940); *Carson* v. *Ellis*, 186 Kan. 112, 348 P.2d 807 (1960). Thus, when the divorce decree and stipulation are considered together, there can be no doubt that the parties thereby clearly and affirmatively expressed their intention to sever their mutual rights of survivorship. *Swett* v. *Swett*, 49 N.H. 264 (1870). We hold that the joint tenancy was converted into a tenancy in common on the effective date of the divorce decree. Accordingly, the husband's one-half tenancy-in-common share passed upon his death to his heirs rather than to his ex-wife. The decree entered by the trial court in this action should be modified to so state.

After the joint tenancy had been terminated, it would have required a "clear expression of intention to create a joint tenancy" (RSA 477:18) to reinstate the tenancy. *See Pierce* v. *Baker*, 58 N.H. 531 (1879) (Doe, C.J.). The fact that the parties continued residing together provisionally, even

though they may have been contemplating remarriage, does not satisfy this statutory standard.

Defendant also asks that the property division decree be modified or nullified because of the reconciliation of the parties after the divorce and the unexpected death of the husband shortly thereafter. This we cannot do in view of the rule that property settlements incorporated in a divorce decree are "binding and not subject to retroactive modification because of a change in circumstances. 2A Nelson, Divorce and Annulment, s. 17.06 (1961 Rev.)." *Douglas* v. *Douglas,* 109 N.H. 41, 43, 242 A.2d 78, 80 (1968); Annot., 166 A.L.R. 675, 693 (1947). *See generally* Annot., 35 A.L.R.2d 707, 717-19 (1954). The husband's death only reinforces this conclusion. 1 Nelson, Divorce and Annulment s. 13.56, at 541 (2d ed. 1945).

*Defendant's exceptions overruled; remanded.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:* I agree that a divorce decree may dissolve a joint tenancy, but I cannot agree that this decree contains a "clear expression of intention" to do so. If this decree had assigned Julie's interest in the property to Louis and ordered him to pay her half of the equity even if he had to sell the property to do so or if the decree specifically stated that the joint tenancy was terminated I would hold that the joint tenancy was broken. But that is not what the decree in accordance with the stipulation says in this case. The decree itself does not purport to affect the title to the property, it simply provides that the equity be divided. It clearly called for future acts by the parties to effectuate a change in title. If Louis could raise the money, he was to pay Julie for her share and by clear implication take a deed from her. If he could not raise the money, the property was to be sold and the equity divided. The decree was a blueprint of how the property was to be divided by the parties in the future and did not itself purport to affect the title.

The parties however took no action which affected title. Although Louis tried to raise the money to comply with the

decree he was unable to do so and the plan was never executed. In fact, the conduct of the parties thereafter would indicate that they intended not to change the title.

Even if one should infer from the language of the decree, as the court does, that the decree itself rather than the parties was to transfer title to Louis upon payment to Julie of her share no such transfer ever occurred because the condition of payment was never complied with. The decree therefore did not effect a change in the title. The court recognizes this when it holds that the parties still were cotenants on Louis' death. In any event permitting a decree effecting a change in title to become executed upon payment of money in the future would lead to a difficult situation for title abstractors and would cast a cloud upon all such titles.