Gladys M. McBEE, Plaintiff-Appellee,

v.

Frances E. CROSBY, Defendant-Appellant.

No. 80CA1148.

Colorado Court of Appeals, Div. II.

Aug. 6, 1981.

Sherman & Duncan, David W. Duncan, Durango, for plaintiff-appellee.

Michael E. Wallace, Durango, for defendant-appellant.

STERNBERG, Judge.

The 31-year marriage of plaintiff Gladys M. McBee and Jessie F. McBee was dissolved in 1977. The principal marital asset was their home which they held in joint tenancy. The court ordered that the house should "remain in joint tenancy" with Gladys McBee retaining possession for life. Jessie McBee was to pay principal, interest, insurance, and taxes. The order was not appealed and became final. It was later recorded.

In 1978, Jessie McBee married defendant, Frances E. Crosby. In 1980, two weeks before his death, Jessie executed a quitclaim deed of his interest in the house to Frances. The deed contained this language:

> "The intent and purpose of this instrument of conveyance is to sever the joint tenancy with Gladys McBee and Dorothy F. Turner, thereby creating a tenancy in common among Frances E. Crosby and the other co-owners. The undivided interest of Frances E. Crosby shall be all of my interest, being equal to or greater than an undivided one-half interest based on per cent of contribution."

Gladys, the first wife, filed this action against Frances, the second wife, seeking to quiet title in her with the right of exclusive possession and a declaration that the second wife had acquired no interest in the property by the quitclaim deed. The trial court held that it was the intent of the judge in the dissolution proceeding to impose a limitation on the title to the property which the deceased husband had no power to change. Stating that to do otherwise would be to thwart the dissolution trial judge's plan and would result in a grave injustice to the first wife, the trial court granted the relief requested by the first wife. We agree and therefore affirm.

In a dissolution proceeding, the trial court has the power to distribute to each of the parties an interest in a residence held in joint tenancy during the marriage. *In Re Marriage of Moncrief*, 36 Colo.App. 140, 535 P.2d 1137 (1975).

Here, the trial court's finding that under the decree the first wife was to have possession and use of the residence until the death of one of the parties and that there-

upon the title was to vest in the survivor finds support in the record of the dissolution proceedings.

When the dissolution decree was entered, the court stated:

"Well, it is pretty obvious that this home was obtained through the efforts of both parties, and I would see no purpose in having it sold and money divided. I think that this would be a bad situation. Both parties have to have a place to live, and we have one now which is not very expensive, compared to what it costs to rent even a small apartment."

Addressing the question of maintenance the court said:

"[I]t will be the order of the court that the [husband] pay the house payment, which is $159 a month, I think. And in addition, pay the [wife] the sum of $250 per month maintenance."

Then the court ordered:

"And as to the property division, it will be the order of the court that the house remain in joint tenancy, that the furniture and furnishings in the house be awarded to the [wife] and that the [wife] have possession of the family home."

Thereafter in response to questions from the husband and the first wife's attorney, the court ordered that, when the mortgage on the house was paid off, the husband would continue to pay the insurance and taxes thereon, stating that the husband "is retaining his ownership in the property, and the wife should have possession, but at no cost to her." Thus, there is ample support for the conclusion of the trial court here that: "These statements make clear the court's intention to require the joint tenancy status to continue until the death of one of the tenants; thereupon title to vest in the survivor."

■ The conclusion is inescapable to us that the intent of the court when dissolving this lengthy marriage was that the right to survivorship be retained after the dissolution. Where, as here, a court has ordered that the property is to remain in joint tenancy, it is the intent of the court with regard to survivorship that is determinative and the intent of the co-tenants is not relevant. *Cf. Mangus v. Miller*, 35 Colo.App. 115, 532 P.2d 368 (1974). While the same result could have been achieved by a better choice of words, the intent of the court entering the decree was clear. Consequently the husband's quitclaim of his interest in the family home was a nullity. *See McGrew v. Lamb*, 60 Colo. 462, 154 P. 91 (1915).

The judgment is affirmed.

PIERCE, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

Although the trial court's and the majority's desire to spare Gladys a "grave injustice" is commendable, that desire is not justification for working a "grave injustice" against Jessie and Frances, his widow.

In the dissolution action Jessie was without legal representation. When Jessie asked for a clarification, the court said:

"he is to retain his ownership in the property and the wife should have possession, but at no cost to her".

Gladys' attorney drew the decree which incorporated the finding of the court. There is no indication that the decree was submitted to Jessie for approval as to form. There is no language in the decree or the hearing which enjoins either party from alienating his or her respective interests in the property. There is no language in the decree or the hearing making exercise of ownership rights in joint tenancy contingent upon survivorship. The decree did give Gladys a sole possessory right and that this right may continue beyond the severance of the joint tenancy I shall accept arguendo, however, the question of possession in a joint tenancy situation is not dispositive of other rights.

The majority refers to *Mangus v. Miller*, 35 Colo.App. 115, 532 P.2d 368 (1974). The court in *Mangus* at page 118 states:

In a joint tenancy, upon the death of one of the joint tenants, the entire undivided interest of the deceased passes, by operation of law, to the surviving joint tenant. See C.R.S. 1963, 153–15–1. In

ascertaining whether a joint tenancy has been destroyed, resulting in a tenancy in common, we have recently adopted the modern test which focuses on the intent of the parties with regard to the right of survivorship characteristic. *Bradley v. Mann,* 34 Colo.App. 135, 525 P.2d 492; *Accord, Mamalis v. Bornovas,* 112 N.H. 423, 297 A.2d 660. Actions by the joint tenants which are inconsistent with the right of survivorship operate to terminate the joint tenancy. *Bradley v. Mann, supra.*

Prior to Jessie's conveyance to Frances, he had conveyed his interest in the family home to his children. A short time later Jessie requested that they reconvey his interest to him, which they did. The original conveyance to his children, which was without objection by Gladys, severed the joint tenancy and created a tenancy-in-common.

There being no language in the the the decree of dissolution justifying the trial court's holding, we have a de facto modification of the original decree. This is impermissible. *Bart v. Bart,* 538 P.2d 427 (Colo.App.1974) (not selected for publication).

To construe the dissolution decree as the majority does leaves Jessie with no present indicia of ownership, with the obligation to pay an existing mortgage, but only an actuarially questionable expectancy based on survivorship. This interpretation renders the property division illusory, and without validity. All elements of property ownership are given to Gladys. Jessie is given nothing but a vague expectation. *In re Marriage of Gehret,* 41 Colo.App. 162, 580 P.2d 1275 (1978), *see In re Marriage of Ellis,* 36 Colo.App. 234, 538 P.2d 1347 (1975). Where a valid construction of a decree is possible, a decree should not be construed so as to render it inoperative. *See Thompson v. Crocker,* 18 Colo. 328, 32 P. 831 (1893).

Quoting from Gladys' own brief, I would hold that "the attributes of ownership each party had before the dissolution continued after the dissolution but for possession in the Appellee." One of the principal attributes of a joint tenancy is the power to sever by conveyance to a third party. *First Na-*

*tional Bank of Southglenn v. Energy Fuels Corp.,* Colo., 618 P.2d 1115 (1980). Such a construction, justly and equitably dividing the property, gives the decree an interpretation consistent with § 14–10–113, C.R.S. 1973.

I would reverse and remand to the trial court with directions to grant defendant appropriate relief.