Merrimack
No. 89-362

PAULA MILLER

v.

LEON MILLER

August 29, 1990

*Copithorne & Copithorne*, of Laconia, and *Harvey & Mahoney*, of Manchester (*Martha W. Copithorne* and *J. Campbell Harvey* on the brief, and *Ms. Harvey* orally), for the plaintiff.

*Barnes, Bender & Chynoweth,* of Concord, and *Elizabeth Cazden,* of Manchester (*Martin Bender* and *Ms. Cazden* on the brief, and *Mr. Bender* orally), for the defendant.

JOHNSON, J. The defendant, Leon Miller, appeals from an order of the Superior Court (*Contas,* J.), approving the recommendation of a Master (*Larry B. Pletcher,* Esq.), which denied his petition to bring forward and partition real estate. The issue presented is whether paragraph six of the parties' stipulation, which was "incorporated into and made a part of [their 1975 divorce] decree," granted the plaintiff, Paula Miller, the right to reside in their marital home until she desired to sell it, or whether her right to live in the house ceased, and sale of the property was required, when their youngest child reached the age of eighteen. We affirm the court's denial of the defendant's petition.

Paragraph six of the stipulation provides that the real estate in issue:

". . . shall remain in the joint names of the parties as joint tenants with the Libellant [Paula Miller] and said minor children being entitled to reside therein. At such time as the real estate is sold, the net proceeds derived from the sale thereof shall be divided equally between the parties."

In the defendant's petition he stated that the property should be sold and the proceeds divided equally because "[t]he parties' children are no longer minors and no longer reside on the premises in question." The plaintiff objected and argued that, in effect, the stipulation provides her with a life estate because it does "not specify a date as to when the real estate would be sold." A hearing was held on May 5, 1989, before a marital master and, on that same day, he issued a recommendation, which was approved by a trial judge, denying the defendant's petition.

The master found "that the plaintiff has lived the last 14 years with the understanding that the timing of the sale of this house was at her option." He explained that "[t]he language of Paragraph six (6) supports her position by *not* clearly stating what could easily have been stated as to the sale of the house when the children attain age 18." (Emphasis in original). The master also found "that there were rational reasons for providing plaintiff with a lifetime interest in the home," such as monetary contributions made by the plaintiff and the fact that the couple obtained the land from the plaintiff's family.

It is common for parties in a divorce proceeding to enter into a stipulated agreement regarding child support, alimony and the division of property. *Narins v. Narins*, 116 N.H. 200, 202, 356 A.2d 665, 666 (1976). Although a court is not obligated to accept the terms of such an agreement, *id.*, the court in this case did so by explicitly approving its terms and adopting them into the final divorce decree.

▮▮▮ When a dispute arises concerning the nature of provisions within a stipulation, we must consider the intent of the parties. *See, e.g., Stebbins v. Stebbins*, 121 N.H. 1060, 1064, 438 A.2d 295, 298 (1981); *Pindar v. Pindar*, 109 N.H. 76, 77, 242 A.2d 76, 77 (1968). "[I]n ascertaining the intent of the parties, 'we will consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole.'" *Centronics Data Computer Corp. v. Salzman*, 129 N.H. 692, 696, 531 A.2d 348, 350 (1987) (quoting *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984)). As we recently explained in *Parkhurst v. Gibson*, 133 N.H. 57, 573 A.2d 454 (1990), however, absent fraud, duress, mutual mistake, or ambiguity, the parties' intentions will be gleaned from the face of the agreement. *Id.* at 62, 573 A.2d at 457; *see also* A. LINDEY, L. PARLEY, 2 LINDEY ON SEPARATION AGREEMENTS AND ANTENUPTIAL CONTRACTS § 32.01, at 32-13 (1990); *Stebbins*, 121 N.H. at 1064, 438 A.2d at 298 (holding based on conspicuous absence of language defining certain items as support); *Mamalis v. Bornovas*, 112 N.H. 423, 428, 297 A.2d 660, 663 (1972) (divorce decree and stipulation considered together clearly and affirmatively expressed the parties' intentions). Questions of intent are "to be resolved by the trier of fact, whose findings will be upheld if supported by the evidence," *R. Zoppo Co.*, 124 N.H. at 671, 475 A.2d at 16, while the meaning of the language in the agreement is a matter of law for this court to decide, *Centronics*, 129 N.H. at 696, 531 A.2d at 350.

▮▮▮ The evidence presented at the hearing and the master's findings illustrate that this agreement did not result from fraud, duress or mutual mistake. The master heard evidence concerning the situation of the parties in 1975, which included testimony relative to the contributions to the purchase and construction of the house made by each of the spouses or their families, and the events surrounding the drafting and signing of the agreement. He then looked at the specific language in paragraph six before concluding that there were rational reasons for allowing plaintiff to remain in the home indefinitely, and that the language of paragraph six supported the plaintiff's position

because it did not specify a time for the sale of the house. We hold that the record reflects no apparent fraud, duress or mutual mistake and the stipulation supports the master's finding that the parties intended to leave the timing of the sale of the house at the sole option of the plaintiff.

■ The language of the agreement clearly and unambiguously reflects the intent of the parties. Paragraph six states that the plaintiff and her minor children were entitled to reside in the house. Nothing in this sentence indicates that the parties intended in paragraph six to tie the plaintiff's right to occupy the property to the age of the children, as the parties did in paragraph one relative to child support. In that paragraph the language refers to the defendant's obligation to his "minor children," indicating that the obligation was intended to terminate when the children reached the age of majority.

The next sentence in paragraph six states: "At such time as the real estate is sold, the net proceeds derived from the sale thereof shall be divided equally between the parties." The words "at such time" clearly indicate an unknown time, and thus that the timing of the sale would be determined at a later date.

The defendant argues that the master erred in construing the stipulation in a manner that gives the plaintiff exclusive lifetime use of the property because such an interpretation results in his having virtually no interest in the property. He contends, *inter alia*, that such a result contravenes this court's decision in *Tishkevich v. Tishkevich*, 131 N.H. 404, 553 A.2d 1324 (1989).

In *Tishkevich*, the final order, recommended by a master and approved by the court, awarded the defendant possession of the marital home, and the furniture and furnishings, but "made no provision for the plaintiff to receive any interest in this property except that 'in the event of a sale of the home by mutual agreement, the net proceeds [were to] be divided equally.'" *Tishkevich*, 131 N.H. at 405, 553 A.2d at 1325. We held that "[s]ince there was no triggering mechanism for a sale upon the happening of a certain event (such as the child reaching the age of majority or the defendant and the child moving from the home), the plaintiff's contingent interest in the homestead [was] virtually nil." *Id.* at 406, 553 A.2d at 1326. This holding was based on the fact that the master did not justify the unequal distribution of property by making specific findings and stating reasons as is required following our decision in *Hodgins v. Hodgins*, 126 N.H. 711, 715, 497 A.2d 1187, 1190 (1985). *Id.*

■■ In applying *Tishkevich* to the case at hand, we first note that the *Hodgins* rule does not apply here because the divorce oc-

curred before *Hodgins* was decided. *Routhier v. Routhier*, 128 N.H. 439, 440, 514 A.2d 825, 826 (1986). Instead, "the [original] order will be sustained if it can be found equitable on the total record." *Id.* More importantly, however, *Tishkevich* can be distinguished because the decree in that case was solely the court's, whereas the agreement in the present case was stipulated to by the parties and adopted by the court. This distinction is important because a decree that adopts a stipulated agreement reflects the intent of the parties as to what is equitable, and does not necessarily reach the result that a court would impose in the same situation. Therefore, where the parties themselves have produced a stipulation, it is not necessary for the court to justify the terms of the agreement, as the court is required to do when it has itself determined the distribution of property.

The defendant also argues that the master's interpretation of the contract unfairly infringes on his right to partition the property. We disagree.

 Although a person who holds real estate with others may bring a petition to partition in superior court, RSA 538:1, "this right may be waived by the parties in interest by express condition or proviso . . . ," *Valley v. Valley*, 105 N.H. 297, 299, 199 A.2d 93, 94 (1964), or by an implied contract, *McDowell v. McDowell*, 61 N.C. App. 700, 703, 301 S.E.2d 729, 730 (1983); *see also Valley*, 105 N.H. at 299, 199 A.2d at 94. Such a restriction, however, may only be in effect for a reasonable time, *McDowell*, 61 N.C. App. at 703, 301 S.E.2d at 730; *Kopp v. Kopp*, 488 A.2d 636, 638 (Pa. Super. 1985), and thus it may not act as "an absolute restriction of alienation," *Valley*, 105 N.H. at 299, 199 A.2d at 94.

 In the present case, we hold that the defendant impliedly waived his right to partition by signing the stipulated agreement. *See McDowell*, 61 N.C. App. at 703, 301 S.E.2d at 731. We further hold that the restriction placed on the defendant is reasonable because the longest possible amount of time during which the property could remain in the wife's possession is for her life. See *id.* at 704, 301 S.E.2d at 731; *Kopp*, 488 A.2d at 638–39; *see also McNally v. McNally*, 129 A.D.2d 686, 688, 514 N.Y.S.2d 449, 450 (1987). The parties specifically stated in the agreement that title would remain in both their names as joint tenants, giving them each a right of survivorship. This specific provision overrides the presumption that parties in a divorce situation usually desire to separate their respective property interests, *Mamalis*, 112 N.H. at 427–28, 297 A.2d at 663, the result being a definite and reasonable time period during which partition is postponed.

The defendant next argues that he was at a disadvantage in negotiating the stipulation because the plaintiff was represented by counsel and he was not. We reject this argument because the defendant failed to show undue influence or that he was under the mistaken belief that the plaintiff's counsel was also representing him.

Finally, the defendant contends that the court's interpretation of the stipulation amounts to an impermissible modification of a property settlement. *See Douglas v. Douglas*, 109 N.H. 41, 43, 242 A.2d 78, 80 (1968). Because the issue below was a determination of the parties' intent in light of the language in the stipulated agreement, and not a request for modification of the agreement, we find no merit to this contention.

*Affirmed.*

HORTON, J., did not sit; the others concurred.