Hillsborough County Probate Court
No. 96-544

ESTATE OF RITA L. CROTEAU

v.

GEORGE D. CROTEAU

December 8, 1998

*Gottesman and Hollis Professional Association,* of Nashua (*David S. Phillips* and *Lisa S. Walker* on the brief, and *Mr. Phillips* orally), for the plaintiff.

*Jon H. Levenstein,* of Bedford, by brief and orally, for the defendant.

HORTON, J. The defendant, George D. Croteau, appeals a decision of the Hillsborough County Probate Court (*Cloutier,* J.) in a declaratory judgment action brought by the plaintiff, the estate of Rita L. Croteau, to quiet title to real estate in Manchester. The probate court held that the joint tenancy had been severed upon the parties' divorce in 1975, and granted the plaintiff title to the property. We reverse.

On July 30, 1964, George and Rita Croteau, husband and wife, purchased a residence in Manchester as joint tenants with right of survivorship. On March 4, 1975, the superior court issued a divorce decree that provided, *inter alia*:

> [S]aid Rita L. Croteau to have use of the real property at 25 Bow Street in Manchester in the County of Hillsborough

and State of New Hampshire until she desires to sell same or remarry, whichever occurs first, at which time the said Rita L. Croteau will pay the said George D. Croteau the sum of Eight Thousand Dollars ($8,000.00) for his interest.

In 1981, George petitioned the superior court for clarification and modification of the decree as it related to the use and sale of the Bow Street property. George claimed the decree "is patently incomplete, in that it does not provide for a settlement date predicated upon other eventualities." In response, Rita argued that

[t]he language of the clause in the divorce decree awarding the *use of the real property* at 25 Bow Street to Rita L. Croteau until she desires to sell same or remarry, as well as the specification of the monetary sum to be payable to George D. Croteau upon *the occurrence of either the sale or remarriage,* is clear, unambiguous and explicit on its face.

(Emphasis added.) The court denied George's request.

Rita never remarried, never sold the property, and continued to reside there until her death on January 17, 1996. Her will, executed on March 25, 1975, left all of her property to the couple's three children. On January 25, 1996, George notified the estate that he claimed title to the Bow Street property as survivor of the joint tenancy created by the 1964 deed. On March 5, 1996, the estate brought an action to quiet title to the property.

The parties agreed to submit the case to the probate court for a decision on the pleadings. On July 18, 1996, the probate court issued an order holding that the property did not pass to George as the surviving joint tenant but was instead an asset of the estate. The court enjoined George from occupying, assuming possession, or entering the property. The court also ordered the property sold, with the first $8,000 to be paid to George, and the remaining proceeds distributed to the heirs. George appeals that order.

On appeal, George contends that the probate court erred in finding: (1) that the divorce decree destroyed his rights to succession as surviving joint tenant; and (2) an intent to terminate the joint tenancy in the 1975 divorce decree.

■■ In determining whether to sever a joint tenancy, we long ago replaced the classic "four unities" test with an analysis of the "proper expression of intention by the parties." *Mamalis v. Bornovas,* 112 N.H. 423, 427, 297 A.2d 660, 662 (1972). The intent of the parties controls when analyzing whether a joint tenancy has been severed. *Id.* "Our determination of the terms of an instrument

is based on the parties' intentions as properly found by the trial court." *McMullin v. Downing*, 135 N.H. 675, 678, 609 A.2d 1226, 1229 (1992) (quotation omitted). When a court order affects property held in joint tenancy, however, the interpretation of the order is a question of law, and we therefore review the decree *de novo*. *Estate of Frederick v. Frederick*, 141 N.H. 530, 531, 687 A.2d 711, 713 (1996).

In *Mamalis*, the parties stipulated and the divorce decree declared that "the equity in their real estate shall be equally divided . . . and the payment . . . shall either be made or initiated within thirty (30) days from the date of the hearing." *Mamalis*, 112 N.H. at 425, 297 A.2d at 661 (quotation and ellipsis omitted). "This agreement and decree certainly contemplated the absolute division of the joint ownership and was totally inconsistent with the prior survivorship rights of the parties." *Id.* at 428, 297 A.2d at 663. In contrast, the instant divorce decree contains no intention to sever the mutual rights of survivorship.

We agree with those jurisdictions that hold that a divorce automatically terminates only those property rights that are dependent upon the marriage relationship, and that property rights of a husband and wife that exist independently of the marriage may survive divorce. *See Sondin v. Bernstein*, 467 N.E.2d 926, 929 (Ill. Ct. App. 1984). A divorce would automatically sever only a tenancy by the entirety, a form of ownership whose attributes are not recognized in New Hampshire. *See Boissonnault v. Savage*, 137 N.H. 229, 231, 625 A.2d 454, 455 (1993); 7 R. POWELL & P. ROHAN, POWELL ON REAL PROPERTY ¶ 624[5], at 52-36 (1998). In New Hampshire, therefore, title to real property is severed by divorce only upon a "proper expression of intention by the parties." *Mamalis*, 112 N.H. at 426, 297 A.2d at 662.

The divorce decree provided Rita Croteau with the right to use and occupy the property, to be terminated by her remarriage or her sale of the property. The court found two instances in which George "would receive a specific sum of money, namely remarriage by Rita L. Croteau or sale of the real property." Neither event occurred. Instead, Rita died without selling the property or remarrying, a contingency not addressed by the divorce decree. If she desired to remarry or sell the property during her lifetime, and therefore sever the joint tenancy, Rita could have done so, thereby limiting George's claim to the $8,000 provided in the decree. However, by surviving Rita with neither condition having occurred, George is entitled as the surviving joint tenant to full and exclusive

possession of the property. 7 R. POWELL & P. ROHAN, *supra*
¶ 617[3], at 51-11 to 51-12.

■ The estate argues that the trial court's denial of George's
1981 motion to clarify and modify the decree serves as "the law of
the case" and bars George's present claim of title to the Bow Street
property. At the 1981 proceeding, neither George nor Rita proffered
arguments about the status of title or ownership of the Bow Street
property, but rather only about its use. The divorce decree never
addressed, and the parties never sought to modify the decree to
consider, the eventual death of one party.

The estate further relies upon the trial court's authorization to
consider "the need of the custodial parent, if any, to occupy or own
the marital residence and to use or own its household effects." RSA
458:16-a, II(e) (1992). We find this argument unpersuasive. As a
general rule,

> [w]here a law affects substantive rights and liabilities, it is
> presumed to apply only to future causes of action unless
> there is some evidence of legislative intent that the statute
> be applied retrospectively. . . . When a statutory change
> . . . solely affects procedures or remedies, rather than
> substantive rights, the normal presumption against retro-
> spective application is reversed.

*Norton v. Patten*, 125 N.H. 413, 417, 480 A.2d 190, 193 (1984)
(citations omitted). RSA 458:16-a, II(e) was enacted in 1987 to be
effective January 1, 1988. Finding no indication that the legislature
intended that the statute be applied retrospectively, we refuse to do
so. Even if applicable, the statute merely provides the trial court
with one factor to consider in allocating the marital home. By
contemplating the needs of a custodial spouse to either "*occupy or
own* the marital residence," RSA 458:16-a, II(e) (emphasis added),
the statute provides no answer to the present dispute.

We do not read the decree as providing for a termination of the
joint tenancy. The decree provides that Rita shall "have *use* of the
real property." The court knew how to provide for an outright
distribution of property to one spouse as evidenced by other
provisions in the decree. In particular, the decree provided that "the
household furniture and furnishings be awarded to the said Rita L.
Croteau disencumbered of all rights of the said George D. Croteau"
and that "the 1971 Cadillac be awarded to the said George D.
Croteau." The court chose language that did not provide for an
outright distribution of the Bow Street property, and we will not
interpret the decree to produce that result.

The estate claims that George "is not entitled to a review of the factual issues in his divorce which pertain to the disposition of the 25 Bow Street property" because he "failed to provide this Court with a record of the divorce proceedings." We refuse to interpret George's failure to appeal the court's *silence* on the issue of title to the Bow Street property as vesting title in Rita. Because neither party appealed the ambiguity in the divorce decree, this claim could not be subject to res judicata. *Cf. Grossman v. Murray*, 141 N.H. 265, 270-71, 681 A.2d 90, 94 (1996).

■ Our review is limited to the language contained within the divorce decree, which did not provide for the eventuality of either party dying before the property was sold. In the absence of a clarifying opinion, or even an opinion on the basis for denying George's request to clarify and modify, we cannot discern any intention by the trial court to terminate the joint tenancy.

We reiterate our strong request that marital masters "make final disposition of all property which is specifically in contention, especially where either party reasonably and seasonably moves for clarification." *Henderson v. Henderson*, 121 N.H. 807, 810, 435 A.2d 133, 135 (1981).

*Reversed.*

BRODERICK, J., concurred specially; JOHNSON, J., dissented; the others concurred.

BRODERICK, J., concurring specially: I concur in the majority's opinion. The majority follows a well-established rule that a clear expression of the parties' intent, not just their divorce, is required to sever their joint tenancy interests. *See Mamalis v. Bornovas*, 112 N.H. 423, 426, 297 A.2d 660, 662 (1972). I write separately because I believe that while the majority's opinion is well-reasoned and grounded in precedent from both our jurisdiction and foreign jurisdictions, it minimizes the reality of divorce and its intended impact on future relations between former spouses. Typically when parties divorce, they "intend at least intuitively to simultaneously separate their respective property interests." *Id.* at 428, 297 A.2d at 663. Although I stand by our precedent, I am persuaded that this intention would be better honored by a rule presuming that divorce severs joint tenancies held by husband and wife, unless there is a clear expression of their intent to the contrary.

Such a rule is reflected in legislation enacted by other States, *see* Conn. Gen. Stat. Ann. § 47-14g (West 1995); Mich. Comp. Laws Ann. § 552.102 (West 1988); Ohio Rev. Code Ann. § 5302.20(c)(5) (Ander-

son Supp. 1997), and in two recent versions of Uniform Probate Code § 2-804(b)(2), *see* UNIF. PROB. CODE § 2-804(b)(2), 8 U.L.A. 217-18 (1998), *amended by* 8 U.L.A. 15 (Supp. 1998). Several States have either adopted the former version of Uniform Probate Code § 2-804(b)(2) or language comparable to it. *See* Alaska Stat. § 13.12.804(a)(2) (1996); Ariz. Rev. Stat. Ann. § 14-2804(A)(2) (1995); Colo. Rev. Stat. § 15-11-804(2)(b) (1998); Haw. Rev. Stat. § 560:2-804(b)(2) (Supp. 1997); Mont. Code Ann. § 72-2-814(2)(b) (1997); N.M. Stat. Ann. § 45-2-804(B)(2) (Michie 1995); N.D. Cent. Code § 30.1-10-04(2)(b) (1996); S.D. Codified Laws § 29A-2-804(b)(2) (Michie 1997). The former version of Uniform Probate Code § 2-804(b)(2) states:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage . . . severs the interests of the former spouses in property held by them at the time of the divorce or annulment as joint tenants with the right of survivorship . . . transforming the interests of the former spouses into tenancies in common.

8 U.L.A. 217-18 (1998); *see also* 8 U.L.A. 15 (Supp. 1998) (amending subsection (b)(2) by adding the word "equal" to make it clear that the effect of severing the interests of the former spouses is to transform their interests into equal tenancies in common, without regard to the percentage of consideration furnished by either party). I encourage our legislature to consider an automatic severance rule as embodied in the Uniform Probate Code to reflect the reality of divorce. *See Disco v. Board of Selectmen*, 115 N.H. 609, 612, 347 A.2d 451, 453 (1975) (encouraging legislative enactment defining petition procedures and thereby eliminating need for court to define procedures post-petition).

JOHNSON, J., dissenting: The majority opinion holds that because the Croteaus' divorce decree did not provide outright for severance of the parties' joint tenancy, George Croteau retained his right of survivorship in the Bow Street property. I believe that in divorce proceedings such as this, where the divorce decree disposes of jointly held property in a manner inconsistent with an intent to maintain a right of survivorship, we should construe the decree to provide for a severance of the joint tenancy. Accordingly, I respectfully dissent.

Unlike my colleagues, I do not believe that the language in *Mamalis v. Bornovas*, 112 N.H. 423, 297 A.2d 660 (1972), and our decision interpreting that case, *see Miller v. Miller*, 133 N.H. 587, 592, 578 A.2d 872, 875 (1990), clearly support such a bright line rule or justifies such a harsh result. In *Mamalis*, 112 N.H. at 424-25, 297 A.2d at 661, we were asked to decide whether a divorce decree that included a stipulation providing for a division of a couple's equity in the marital home was sufficient to terminate a joint tenancy. We reviewed the common law regarding joint tenancies and adopted a general rule that "[w]hen joint tenants clearly express an intention to terminate their mutual rights of survivorship by some instrument of record, such as the written and signed stipulation of the parties filed in the divorce proceedings herein, and the decree of the court thereon, that intention ought to be given effect." *Id.* at 426, 297 A.2d at 662. We further noted, however, that

> husbands and wives ordinarily take title to their homestead as joint tenants because they are married, intend to remain so, and intend that in the event of the death of one of them the survivor should take full title to the homestead in the capacity of surviving spouse. When the marriage is dissolved, the basic condition and consideration involved in the original decision to create the mutual survivorship rights — the marriage itself — is expressly, actively, and publicly terminated. The majority of persons severing their marital relationship very probably intend at least intuitively to simultaneously separate their respective property interests. A rule which would pass to the survivor after a divorce the half of the property belonging to the deceased ex-spouse would often vest the bulk of the estate in the survivor and would ordinarily be in direct contravention of the intent of the deceased.

*Id.* at 427-28, 297 A.2d at 663; *see, e.g., Wardlow v. Pozzi*, 338 P.2d 564, 566 (Cal. Dist. Ct. App. 1959) (it is unlikely that a divorcing couple would enter into an agreement dividing assets with the intent to leave the bulk of his or her estate to the other). Accordingly, in *Mamalis*, we found that the joint tenancy was severed because "[i]n addition to obtaining a divorce, the parties in this case stipulated and the court decreed that their equity in the real estate should be equally divided." *Mamalis*, 112 N.H. at 428, 297 A.2d at 663. We therefore concluded that "[t]his agreement and decree certainly contemplated the absolute division of the joint ownership and was totally inconsistent with the prior survivorship rights of the parties.

Thus, when the divorce decree and stipulation are considered together, there can be no doubt that the parties thereby clearly and affirmatively expressed their intention to sever their mutual rights of survivorship." *Id.* (citations omitted).

I read *Mamalis* as not requiring an explicit recitation of an intent to sever the tenancy, but rather, that given the realities of modern divorce, property dispositions allotted by the divorce decree that are inconsistent with an intent by the parties to retain long-term property interests as a couple will sever the joint tenancy. Most recently, in *Miller*, 133 N.H. at 592, 578 A.2d at 875, we emphasized that because the parties specifically provided in the divorce decree that their property would be held as joint tenants, "[t]his specific provision overrides the presumption that parties in a divorce situation usually desire to separate their respective property interests." Accordingly, I cannot agree with either the majority or the concurrence that *Mamalis* and its progeny clearly require that parties in a divorce *must specifically state* that the decree destroys the joint tenancy in order to effectuate a severance.

I agree with the majority that having abandoned the "four unities" test, and absent legislative mandate, *see, e.g.*, Conn. Gen. Stat. Ann. § 47-14g (West 1995), a divorce does not automatically sever a joint tenancy. Rather, the proper focus is on the intent of either the parties as evinced by the terms of stipulation, *see Mamalis*, 112 N.H. at 428, 297 A.2d at 663; *Bradley v. Mann*, 525 P.2d 492, 493 (Colo. Ct. App. 1974), *aff'd*, 535 P.2d 213 (Colo. 1975); *cf. Renz v. Renz*, 256 N.W.2d 883, 886 (N.D. 1977), or the presiding judge or marital master by decree, *see Kirven v. Reynolds*, 536 So. 2d 936, 938 (Ala. 1988); *cf. Lutzke v. Lutzke*, 361 N.W.2d 640, 652 (Wis. 1985). Our case law indicates that intent should be determined in light of the practical realities of divorce and its intended impact on the future relations between former spouses. *See Mamalis*, 112 N.H. at 427-28, 297 A.2d at 663; *Miller*, 133 N.H. at 592, 578 A.2d at 875. Accordingly, I agree with those courts that have found that where the disposition of property in a divorce decree is inconsistent with the intent that such property will pass to the ex-spouse pursuant to a right of survivorship, the joint tenancy is destroyed. *See United States v. Gibbons*, 71 F.3d 1496, 1499 (10th Cir. 1995); *Renz*, 256 N.W. at 886; *cf. Wardlow*, 338 P.2d at 565 (based on four unities test). I would hold that "[a]ctions by the co-tenants which are inconsistent with the right of survivorship operate to terminate the joint tenancy. Therefore, the question becomes primarily one of ascertaining the intent and expectations of the parties with regard

to that characteristic of joint tenancy." *Bradley*, 525 P.2d at 493; *see, e.g., Gibbons*, 71 F.3d at 1499.

I believe that adoption of this rule, as opposed to that set forth by the majority, is more prudent given that often courts may be called upon to interpret the intent of ambiguous language contained in divorce decrees decades old. This task is made especially difficult because over time witnesses die or their memories fade. Further, judges and magistrates drafting the decree may die, retire, or otherwise be unable to recall the basis for decrees issued years earlier. Although the majority's rule also may allow courts to avoid these difficulties, I believe that the better presumption is one that considers the fundamental purpose of property division in divorce.

I now turn to the language of the divorce decree, the meaning of which we review *de novo. Miller*, 133 N.H. at 590, 578 A.2d at 873. The divorce decree, while setting forth the respective rights of the parties, did not specify whether the property would continue as a joint tenancy or whether the parties would become tenants in common. The structure of the property disposition in this case is clearly inconsistent with the retention of a joint tenancy and manifests an intent that George would not possess a right of survivorship after the divorce. *See, e.g., Gibbons*, 71 F.3d at 1499. Rita Croteau unilaterally possessed the power to destroy the right of survivorship by either remarriage or sale. *See Gibbons*, 71 F.3d at 1499 (provision for division of proceeds of sale is consistent with intent to retain joint tenancy *if* sale is conditioned on subsequent agreement of the parties); *Bradley*, 525 P.2d at 494 (same). George could not, however, on his own force partition, a basic right of the joint tenant. *See Boissonnault v. Savage*, 137 N.H. 229, 231-32, 625 A.2d 454, 456 (1993); *Poulson v. Poulson*, 70 A.2d 868, 870 (Me. 1950).

The majority relies heavily on the fact that Rita never sold the property or remarried, and concludes that absent a specific provision setting forth the relative rights of both parties if neither event occurred, the joint tenancy necessarily survived. I believe that the fact that Rita neither sold the property nor ever remarried does not eviscerate the clear intent expressed by both parties in the decree to sever their marital and economic relationships. Further, the majority's analysis on this point is inconsistent with *Mamalis*, where we found that even though the divorce decree did not specifically enumerate the parties' property holdings in the event that the couple failed to sell the property within the thirty days set forth by the decree, *Mamalis*, 112 N.H. at 425, 297 A.2d at 661, the joint tenancy was nonetheless destroyed. *Id.* at 428, 297 A.2d at 663.

In fact, we specifically held that the "joint tenancy was converted into a tenancy in common on the effective date of the divorce decree." *Id.*

Accordingly, I would hold that the divorce decree issued in 1975 destroyed the joint tenancy, and George Croteau's right of survivorship on the Bow Street property, and would affirm the ruling of the probate court.