2001 ME 64

**Joel MacDOUGALL**

v.

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 13, 2000.

Decided: April 24, 2001.

Patrick S. Bedard, Esq., Eliot, for plaintiff.

G. Steven Rowe, Attorney General, Justine Guignard Tanguay, Asst. Attorney General, Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Joel MacDougall appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) affirming a decision of the Department of Human Services determining the amount of child support he owed. He contends that the DHS hearing officer erred in calculating his gross base pay for purposes of determining the amount of child support due. Because we conclude that the hearing officer erred in categorically rejecting all of Mac-Dougall's reported business expenses, we vacate.

[¶ 2] This case involves enforcement of child support pursuant to the Uniform Interstate Family Support Act, 19–A M.R.S.A. §§ 2801–3401 (1998 & Supp.2000) (UIFSA). The facts are undisputed. Joel MacDougall and Deborah MacDougall (now Moran) were divorced in New Hampshire. The divorce decree incorporated a

stipulation agreement that provided for joint custody of their two children and calculated child support as follows:

> Joel T. MacDougall shall pay to Deborah Ann MacDougall twenty-five (25%) per cent of his gross base pay (excluding any income for overtime, additional pay above base rate through his current employer, and any income from second employment that may be required of him to fulfill his financial responsibilities as set forth herein) for the support of the parties' minor children. The parties recognize that the support obligation shall be reviewed and adjusted as each child attains the age of 18 years.

[¶ 3] At the time of the stipulation and through 1988, MacDougall was employed at the Kittery Naval Shipyard where he received base pay, overtime pay, and other pay for hazardous or dirty working conditions. In 1988, MacDougall left the Shipyard and became a self-employed carpenter. From the time of the divorce in 1984 until 1995, MacDougall paid child support in the amount of $336 per month. In 1995, when his oldest child attained the age of 18, he unilaterally reduced the child support to $168 per month.

[¶ 4] Deborah Moran moved to North Carolina. In June 1998, DHS received a Child Support Enforcement Transmittal Request from the State of North Carolina requesting collection of a child support arrearage of $67,560 from MacDougall for April 1984 through June 1998, based on an affidavit of arrears calculating MacDougall's "gross base pay" as his gross receipts or sales listed on Schedule C (Profit or Loss from Business) of his tax returns. The North Carolina agency subsequently amended that figure to $63,190.46, and DHS served a notice of debt upon Mac-Dougall alleging child support debt of $63,190.46.

[¶ 5] MacDougall appealed to DHS on the basis he did not owe any past child support, and an evidentiary hearing was held. *See* 19–A M.R.S.A. § 2451 (1998). The hearing officer issued a decision finding MacDougall's child support debt to be $19,516.29, on the basis that the proper measurement of "gross base pay" was his "gross income" shown on his Schedule C after deducting the cost of goods sold. MacDougall timely sought judicial review by the Superior Court pursuant to 19–A M.R.S.A. § 2453 (1998) and M.R. Civ. P. 80C. The Superior Court entered a judgment affirming the hearing officer's decision, and MacDougall appeals.

[¶ 6] When the Superior Court acts as an intermediate appellate court, we review DHS's decision directly. *See Baer v. Comm'r, Maine Dep't of Human Servs.,* 1999 ME 145, ¶ 7, 738 A.2d 849, 850. We review for legal error and, when the findings are disputed, we will overturn the findings of fact "only where they are clearly erroneous, i.e. unsupported by substantial evidence anywhere in the record." *Kelley v. Comm'r, Maine Dep't of Human Servs.,* 591 A.2d 1300, 1303 (Me.1991).

[¶ 7] MacDougall contends that the hearing officer erred as a matter of law in its determination of "gross base pay." *See* 5 M.R.S.A. § 11007(4)(C)(4) (1989). According to MacDougall, the hearing officer should have taken into account his business deductions in determining his gross base pay. We agree.

[¶ 8] Pursuant to UIFSA, the law of the state that issued the divorce decree governs the nature, extent, amount, and duration of the support obligation and payment of arrearages under the order. *See* 19–A M.R.S.A. § 3153 (1998). In New Hampshire, courts interpret the meaning of a stipulation as incorporated in a divorce decree by looking at the intent of the parties as expressed by the language in

the stipulation. *See Sommers v. Sommers,* 143 N.H. 686, 742 A.2d 94, 99 (1999); *Miller v. Miller,* 133 N.H. 587, 578 A.2d 872, 873 (1990). "[I]n ascertaining the intent of the parties, [the court] will consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *Miller,* 578 A.2d at 873 (internal quotation marks omitted). "[A]bsent fraud, duress, mutual mistake, or ambiguity, the parties' intentions will be gleaned from the face of the agreement." *Id.* "Questions of intent are to be resolved by the trier of fact, whose findings will be upheld if supported by the evidence, while the meaning of the language in the agreement is a matter of law for [the] court to decide." *Id.* (citations and internal quotation marks omitted.)

[¶ 9] In this case, there is no statutorily, contractually, or other clearly defined meaning of "gross base pay." The parties' intent and the language of the agreement focused on MacDougall's employment at the time the stipulation was entered into. The agreement excludes overtime pay, extra pay for things such as working in dangerous conditions, or income from a second job. Thus, in the present context, it is necessary to determine for a self-employed person what would be comparable to gross base pay of an employee for purposes of child support pursuant to the agreement.

[¶ 10] In general, for income tax purposes, the items reported as "income" on an individual income tax return include both gross wages and the net profit or loss from business reflected on Schedule C. Thus, the amount reported from Schedule C, although labeled "net" profit, is analogous to "gross" wages. The amount of net profit or loss takes into consideration deductions for "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business . . . ." Treas. Reg. § 1.162–1.

■ [¶ 11] As the party seeking to recover a child support arrearage, DHS has the burden of establishing that MacDougall owes child support. *See Dep't of Human Servs. v. Roy,* 585 A.2d 813, 816 (Me.1991) (placing burden on DHS to establish amount of debt it seeks to recover from the parent responsible for the State's payment of public assistance to support the child); *Jones v. Jones,* 671 So.2d 852, 854 (Fla.Dist.Ct.App.1996) (stating that the party seeking to enforce the divorce judgment has the obligation to establish the amount the former spouse was required to pay and the amount he did pay).

[¶ 12] DHS purported to meet its burden by merely introducing a schedule setting forth, for the years 1989 to 1997, MacDougall's "gross receipts" from line one on his Schedule C to his federal tax returns. DHS argued that MacDougall should have paid twenty-five percent of that total, i.e., $113,590.46, that he did pay $50,400, and therefore owed the difference of $63,190.46. MacDougall responded that after he ceased being an employee of the Kittery Naval Shipyard, his "gross base pay" was his "net profit" reported on his Schedule Cs. According to MacDougall's Schedule Cs, that amount totalled $66,718.15 for the 1989 to 1997 period. Because MacDougall had paid substantially more than twenty-five percent of $66,718.15, MacDougall argued that he owed nothing.

[¶ 13] Although DHS argued that the "gross receipts" line was the appropriate measure of "gross base pay" and MacDougall argued that the "net profit" line was appropriate, the hearing officer picked the line representing gross income before business expenses. The hearing officer gave two independent rationales for this

amount. First, he found as a matter of law that it would be inappropriate to deduct business expenses because the divorce order "made no provision for any deductions for insurance, transportation to work, tools or other work-related expenses." Second, he found as a matter of fact that MacDougall's reported business expenses were "unreliable."[1]

[¶ 14] The hearing officer's first rationale, that the divorce order failed to provide for deductions of business expenses, does not establish that MacDougall's business expenses should now be ignored. Because MacDougall was working at the Shipyard at the time of the divorce, his "gross base pay" was easily calculated as his normal wages. The Shipyard paid all business expenses related to MacDougall's labor. The hearing officer erred in concluding that the divorce decree's silence about business expense deductions was probative of how to calculate MacDougall's "gross base pay" as a self-employed individual.

[¶ 15] The hearing officer's second rationale, i.e., that MacDougall's business expenses listed on his tax returns were "unreliable," was not advanced by DHS at the hearing,[2] and is unsupported on this record. The hearing officer observed that MacDougall paid more child support than he was required to pay (in effect conceding the error of his legal position). In the absence of a DHS challenge to the reliability of MacDougall's tax returns, evidence that MacDougall's profits were low and that he continued to pay child support at the level he had paid when he was employed by the Shipyard, does not establish that he made more money than his tax returns reveal. Many individuals are willing to sacrifice income to enjoy the independence associated with self-employment. In any event, being unwilling to let one's dependents suffer for one's employment choices is not evidence of tax fraud as the hearing officer suggests. Moreover, the hearing officer heard evidence that MacDougall's current wife contributed her income to the family coffers. He therefore erred in concluding that MacDougall's tax returns were unreliable based on the erroneous assumption that MacDougall lived solely off his business income, and relied only on his business income to make his child support payments.

[¶ 16] Though DHS suggested at the end of its closing argument that the hearing officer might compromise and use MacDougall's gross receipts less the cost of goods sold, DHS's primary position throughout the hearing was that the hearing officer should use the line providing "gross receipts." MacDougall contended that his "net profit" from his tax returns

---

1. Specifically, the hearing officer determined as follows:

   What is clear from Mr. MacDougall's "Profit or Loss from Business" statements is that his reported profit or loss is unreliable. Mr. MacDougall reports a self-employed level of income below that of an unskilled worker. Additionally, he offered only vague explanations of why his full-time occupation often earns well below minimum wage or even the poverty level of income. Most telling regarding the unreliability of these profit or loss amounts is the fact that during this period of self employment Mr. MacDougall only reported a profit of $66,718.15, yet paid during that same time period $30,240.00 in child support payments. This time period included two years (1994 and 1997) when Mr. MacDougall's reported profit/loss was less than the amount he paid in child support.

2. Nothing alerted MacDougall that the hearing officer would be questioning the accuracy of his tax forms. DHS did not contend that they were inaccurate. Furthermore, though DHS casts the hearing officer's decision as a credibility determination, the DHS did not raise any issue of credibility at the hearing.

was the amount comparable to his regular wages or his "gross base pay," but neither his contention, nor that of DHS, required the hearing officer to renounce the discretion, on an adequate record, to disallow some, rather than all, of the expenses listed by MacDougall.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the Department of Human Services for a new hearing to determine the amount of child support due, if any.