STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-10
REC - CUM -

CAROLE LOVELY-BELYEA,

Petitioner,

v.

ORDER ON PETITIONER'S
80C APPEAL

MAINE STATE RETIREMENT SYSTEM,

Respondent.

The petitioner, Carole Lovely-Belyea, has appealed the final administrative action by the Maine State Retirement System ("MSRS"), pursuant to M.R. Civ. P. 80C. The petitioner asserts that MSRS did not comply with the applicable state and federal regulations governing the conversion of a retirement system from one that includes an age-discriminatory disability policy to one that does not, and consequently argues that she should be permitted to enroll in the non-discriminatory plan. After reviewing the petitioner's brief, MSRS's response, and the relevant law, the petitioner's requested relief is denied.

## STATUTORY BACKGROUND

The federal Older Workers Benefit Protection Act ("OWBPA"), 104 Stat. 978, 981-82, Public Law 101-433, contains a provision prohibiting age-dependent disability benefits in retirement systems, but includes a provision by which employees could continue to be covered by the "age-discriminatory" plan if the employees are given the opportunity to elect participation in the new plan. The employer could offer employees, hired prior to October 16, 1992, the option to elect participation in the

new, non-discriminatory plan in lieu of the existing age-discriminatory plan if : (1) the offer was made and reasonable notice provided no later than the date that was two years after the enactment of the OWBPA; and (2) the employee was given up to 180 days after the offer in which to make the election. OWBPA, § 105(c)(2)(A)(ii). The date of enactment was October 16, 1990. If the employee did not elect to be covered by the new disability benefits, the employer could continue to cover the employee under the age-discriminatory plan. OWBPA, § 105(c)(2)(B).

In Maine, legislation governing the election of the new, non-discriminatory benefits plan by public employees was enacted as required by the OWBPA. 5 M.R.S.A. § 17941 (1992) *repealed by* P.L. 1995, ch. 643, § 16 (eff. April 10, 1996). Under § 17941, MSRS was responsible for providing information to state agencies and school administrative units that described the amended disability plan, the disability plan without the amendment, and "a form for individual member election to be covered under the plan as amended." 5 M.R.S.A. § 17941(1)(A). The statute provided that the state agency or school administrative unit was responsible for distributing information and election forms to the eligible members, and collecting the completed election forms and returning the forms to MSRS. 5 M.R.S.A. § 17941(1)(A). The statute specified that the information *and* election form were to be given to the eligible members not later than October 16, 1992, and that the election to participate in the new plans was to be effective 180 days later (April 14, 1993) only if the election was signed and dated on or before a date "established by the executive

director that may not be later than 180 days after October 16, 1992 [April 14, 1993]."[1] § 17941(1)(C),(D),(E). Unless a member elected to be covered by the new plan, she would be covered by the existing plan. § 17941(2). The election was irrevocable. § 17941(1)(E).

## FACTUAL BACKGROUND

The petitioner was employed as a teacher by the Lewiston School Department when, on March 31, 1993, she signed an MSRS 1993 Disability Election Form, electing not to move to the non-discriminatory benefits plan. The petitioner remained covered under the age-discriminatory plan. When the petitioner applied for disability benefits in 1998, her claim was denied by the Executive Director of MSRS, because she was beyond the "normal retirement age." She appealed the denial to the Maine State Retirement Board (Board), on the ground that her election was not valid because she was not given the proper notice of election under the governing statute, and the Board affirmed the Executive Director.

The Board found that the election form was not distributed by MSRS until February of 1993, and was not distributed to the school employees until March 3, 1993, in contravention of § 17941(1)(C), which provides that the "school administrative unit shall give the information *and* election form to each member entitled to the election not later than October 16, 1992." R. 34.6- R. 34.7 (emphasis added). The Board found that the preponderance of the evidence demonstrated that

---

1 Based on legislative history of the federal statute, OWBPA, the Board accepted the assertion that the employees were to be given 180 days, as a minimum, in which to make their election.

the initial employee information sheet, which was sent by MSRS to the Lewiston School Department (and all employers of members of the retirement system) in October 1992, had been distributed to all employees. R. 34.7. The Board found that although the petitioner testified that she regularly did not receive materials that had been left in her school mailbox, the record did not demonstrate that this was due to the school's lack of delivery, but rather could have been attributable to the fact that a third person, with the petitioner's permission, would remove the contents of the box and place them on the petitioner's desk. R. 34.7. The Board found that, even if the petitioner had not received the information sheet by October 16, 1992, she had received both the information sheet and election form by March 3, 1993.[2] R. 34.7. The Board concluded that the petitioner's election was valid because she had received an information sheet and election form by March 3, 1993, and the petitioner has not provided any facts that demonstrate she was actually prejudiced by the delay in receiving this information. R. 34.7

The petitioner argues that there was no specific finding that she received the *information sheet* by October 16, 1992, and that the finding that the petitioner received the information sheet in October 1992 was not supported by substantial evidence. The petitioner asserts that because she did not receive the information by October 16, 1992, her election was invalid. The petitioner asserts that because there was no compliance with the statute which required the timely distribution of

---

2 The Board's opinion erroneously states that the petitioner had received an election form and information sheet by March 3, *1992.*, however this is clearly a typographical error.

4

information *and* election forms, the employer was not permitted to continue the age-discriminatory benefits plan. The petitioner argues that MSRS was wrong to hold that the petitioner was required to establish prejudice resulting from the lack of compliance with the statutory notice requirements.

## DISCUSSION

I.    Substantial Evidence

When reviewing administrative agency decisions, the Superior Court must uphold the agency's findings of fact if supported by substantial evidence on the record as a whole. MacDougall v. Department of Human Services, 2001 ME 64, ¶ 6, 769 A.2d 829, 831. The finding of fact must be supported by substantial evidence and the reasonable inferences to be drawn therefrom. Wadleigh v. Higgins, 358 A.2d 531, 531-32 (Me. 1976). Even if there is evidence that would support a contrary result, the findings should be upheld if not clearly erroneous. Harold D. Smith & Sons, Inc. v. Finance Authority of Maine, 543 A.2d 814, 816-17 (Me. 1988).

The petitioner first asserts that the Board did not make a finding that the *information sheet* had been distributed by October 16, 1992. The Board first writes, in the context of whether the provisions requiring that the information sheet and election form be provided by October 16, 1992, that "the preponderance of the evidence demonstrates that [the information sheet] was distributed to all employees." R. 34.7.[3] Later, the Board writes that "[t]he critical issue under §17941 is

---

3 The Board wrote:
Looking to § 17941, the requirement which was not satisfied was subsection (1)(C) which provides that the 'school administrative unit

5

whether the failure to provide an election form or, for the sake of argument, an information sheet as well, by October 16th, renders the appellant's election not to move to the no age plan invalid." R. 34.7. Based on these declarations, the court concludes that the Board did find that the information sheet was distributed to all employees by October 16, 1992. U.S. v. Nee, 261 F.3d 79 (1st Cir. 2001) (inferring a finding by the district court, where that finding was not explicit, based on the lower court's written opinion)

The petitioner next argues that the finding that the information sheet was distributed to all employees was not supported by substantial evidence. The information sheet was not typed until October 15, 1992. Ms. White, secretary of personnel at the Lewiston School Department, testified that she had no knowledge of whether or how the notice was provided to the teachers, and that the principals were responsible for delivering the sheets to the teachers. The petitioner testified that she did not receive the notice through that system and frequently did not receive notices provided through that system. The Board based its finding that the information sheet had been distributed on the fact that the record established that, in the normal course of business, school distributions were placed in the petitioner's

shall give the information and election form to each member entitled to the election not later than October 16, 1992.' There is no dispute that the election form was not distributed by the system until February, 1993, and not provided to the school employee until March 3, 1993, when it was attached to the employee's pay check, along with a new information sheet. With respect to the initial employee information sheet, the Board finds that the preponderance of the evidence demonstrates that it was distributed to all employees . . . .
R. 34.6-7.

mailbox. The Board concluded that the petitioner's testimony that she often did not receive materials that had been placed in her mailbox did not establish a lack of delivery, but could have been attributable to the fact that a third party would remove the contents of her mailbox and place them on the petitioner's desk. R. 34.7.

The court cannot conclude that the findings of the Board were clearly erroneous. Ms. White testified that she typed up the information sheet, recalled that each of the principals picked up the information sheet in the morning of October 15, 1992, that she instructed the principals that the information sheet must go out the same day, and that the principals regularly distributed materials to the teachers in this way, including pay checks. R. 26.4-26.5. The petitioner testified that she normally received materials from her principal through her mailbox, and that someone else often retrieved her mail and placed it on her desk. R. 26.47- 26.48. Accordingly, there is substantial evidence supporting the Board's finding that the information sheet was delivered by October 16, 1992.

II.    Non-compliance with Statutory Notice Provisions

The governing statute, § 17941, does not set out a remedy if the notice deadlines are not complied with. In various contexts of required notice, the Law Court has concluded that even where a statutory notice requirement is couched in terms of the mandatory "shall," certain details of the notice could be regarded as directory. Givertz v. Maine Medical Center, 459 A.2d 548, 554 (Me. 1983) (in the context of a notice of claim); Seider v. Board of Examiners of Psychologists, 1998 ME 78, 710 A.2d 890 (in the context of notifying Seider of her appellate rights); Interstate

7

Food Processing Corp. v. Town of Fort Fairfield, 1997 ME 193, 698 A.2d 1074 (using the same rationale to allow taxpayer to appeal even where he had not paid taxes as of the date they were due); Town of Ogunquit v. Department of Public Safety, 2001 ME 47, 767 A.2d 291 (in context of failure to serve the petitioner by certified mail within statutory time limits); see also Amann v. Stow School System, 982 F.2d 644 (1st Cir. 1992) (concluding that hearing officer's failure to reach a final decision within 45 days, as statutorily required, was not grounds for vacation where no harm was shown); Ouellette v. Maine Bonding & Casualty Co., 495 A.2d 1232 (Me. 1985) (where the court excused non-compliance with contractual notice provisions of insurance policy). "[S]tatutorily-required notice must be given mandatory, not directory, effect when such language is of the very essence of giving notice or if the rights of the interested parties would be prejudiced." Seider, 1998 ME 78, ¶5; 710 A.2d at 892 (internal quotations omitted).

The two notice provisions at issue are (1) the requirement that the information sheet and election form be distributed by October 16, 1992, and (2) the requirement that the employees be given 180 days between notice and the required election (which, in this case, would have been April 14, 1993). § 17941(1). The purpose of the notice provisions in § 17941 are to allow a public employee to have time to consider her decision of whether to elect to be covered by the existing age-discriminatory benefits plan or the new non-discriminatory plan.

As set out above, the Board's finding that the informational sheet was distributed to the employees in October 16, 1992, was supported by substantial

8

evidence. Thus, the determinative issues are (1) whether the distribution of an election form with the information sheet was "of the very essence of giving notice" and whether the failure to distribute an election form with the information sheet prejudiced the rights of the petitioner; and (2) whether requiring the employees to make their selection by April 1, 1993, rather that April 14, 1993, was "of the very essence of giving notice" and whether the failure to allow the petitioner until April 14, 1993, to make her election prejudiced the rights of the petitioner. The election form did not provide any additional information about the two benefit plans and therefore was not of the very essence of giving notice. In addition, the failure to allow employees until April 14, 1993, to make their election (and therefore giving less than the required 180 days to make a selection of plans) was not of the very essence of giving notice because the purpose of giving notice was served by allowing the employees 166 days to make their selections. The Board found that the petitioner put forth no facts that demonstrate that she was actually prejudiced by the delay in receiving the election form, or by the requirement that she return the election form on April 1, 1993 (the school's election deadline) rather than April 14, 1993 (the statutory election deadline). R. 34.7.

## CONCLUSION

The Board found that the petitioner received the information sheet by October 16, 1992, and that finding was not clearly erroneous. Accordingly, because the failure to provide an election form and the failure to allow until April 14, 1993,

9

to make an election did not go to the "essence of notice" and because the petitioner did not provide facts demonstrating that she was prejudiced by any non-compliance with the statutory notice provisions, the court concludes that the Board's decision should be affirmed.

The entry is

The decision of the Maine State Retirement Board is AFFIRMED.

Dated at Portland, Maine this 19th day of December 2001.

Robert E. Crowley
Justice, Superior Court

10

Date Filed __02-07-01__     __Cumberland__     Docket No. __AP-01-10__

County

Action __80cAppeal__

Carol Lovely-Belyea        Maine State Retirement System

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Donald F. Fontaine, Esq.<br>P.O. Box 7590<br>Portland, Maine 04112 | James M. Bowie, AAG 626-8513<br>6 State House Station<br>Augusta, ME 04333-0006 |

Date of
Entry