**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0467, In the Matter of Johanna Papantones and Mark Papantones, the court on November 3, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The respondent, Mark Papantones, appeals an order of the Circuit Court (Prevett, J.) re-affirming his alimony obligation to the petitioner, Johanna Papantones. We reverse and remand.

The following facts are reflected in the trial court's order or are otherwise supported by the record. The parties were married in 1984. After 30 years of marriage, the parties filed for divorce in 2014. At the time of the divorce, the petitioner was 57 and the respondent was 55. The parties were each represented by counsel and reached a final stipulation agreeing to the terms of their divorce. In May 2015, the court approved the final stipulated divorce decree, which required the respondent to pay the petitioner $2,650 in monthly alimony payments until one of several conditions occurred. The alimony provision states:

> [The respondent] shall pay [the petitioner] alimony in the amount of $2,650.00 per month and continuing each month thereafter until the death of either party, [the petitioner's] remarriage, [the respondent's] retirement from full time employment, or [the petitioner's] receipt of inheritance funds in an amount in excess of $100,000.00, whichever occurs first.

Four years and eight months later, in January 2020, the respondent retired from full-time employment at the age of 59. He then stopped paying alimony. In February 2020, the petitioner filed a "Verified Petition to Bring Forward, Motion for Contempt and to Enforce Decree." (Capitalization, bolding, and underlining omitted.) The petitioner alleged that she did not contemplate the respondent's "early" retirement when the parties negotiated the terms of the final stipulation. The petitioner requested that the court find the respondent in contempt for failing to pay "alimony pursuant to the terms of the Final Decree."

The Circuit Court (Burns, J.) held a hearing in September 2020. The petitioner testified that she anticipated the respondent would work until "a typical retirement age," when he would have been 67 and she would have been

69.  She testified that she would not have agreed to the stipulation if she had known the respondent could retire earlier and stop paying alimony.  Likewise, the respondent testified that he would not have agreed had he known the alimony obligation would last for 12 years.  The court concluded that "such differing understandings of the seminal language of their agreement, and their failure to define the term of alimony more clearly, constitutes a mutual mistake by the parties."  The court noted that "a mutual mistake in the formation of the contract gives rise to the opportunity for reformation of the contract, or the further definition or clarification of its terms."  The court then granted the petitioner's request for enforcement of the alimony provision "on a temporary basis," though it declined to set a specific duration for alimony payments "absent further testimony from the parties."  But because the respondent "believ[ed] that he was in compliance with the terms of their agreement," the court denied the petitioner's motion for contempt.

After the court ruled that the respondent's alimony obligation had not terminated, the respondent filed a motion to modify alimony on the ground that his retirement and reliance on the parties' agreement had caused a "substantial negative change in his financial circumstances."  The petitioner objected, and filed a second motion to find the respondent in contempt for failing to pay alimony.

The Circuit Court (Prevett, J.) held a final hearing in March 2022 on the original petition to enforce, the respondent's motion to modify alimony, and the petitioner's second motion for contempt.  Following the hearing, the court issued orders in which it "re-affirmed" the respondent's alimony obligation and ordered that it "shall continue unchanged."  (Capitalization omitted.)   The court concluded that "'retirement from full-time employment' can only reasonably be interpreted as the substantial equivalent of 'full retirement age,'" and that interpreting the decree to permit an "immediate[]" retirement would make the alimony obligation "nothing short of worthless and unenforceable."  The court also denied the respondent's motion to modify alimony based on his retirement status, concluding that the respondent failed to meet his burden to show "that his voluntary retirement was reasonable under the circumstances."  The court ordered the respondent to continue paying alimony in the amount of $2,650 per month and ordered him to pay the $71,550 in unpaid alimony that had accrued since his retirement, but, again, did not enter a finding of contempt.  The respondent filed a motion for reconsideration and clarification, which the court denied, except to clarify that the respondent's retirement age for the purpose of terminating alimony is 67.  This appeal followed.

The respondent first contends that the trial court erred by "applying reformation and adding a material term to the alimony provision of the parties' stipulated final decree, where the alimony provision had plain language that retirement from fulltime employment terminated alimony."  (Bolding omitted.)  In response, the petitioner argues that the court did not reform the agreement,

2

but rather, reasonably interpreted the agreement as written.  She further asserts that even if the trial court did reform the agreement, that decision was "lawful and a sustainable exercise of discretion."

We begin by addressing the trial court's interpretation of the stipulation.  Although the respondent couches his argument in terms of reformation of the parties' agreement, we construe his argument to mean that the trial court erred in its interpretation of the alimony provision.  The respondent argues that the plain language of the decree unambiguously states that his alimony obligation terminates upon his "retirement from full time employment."  The petitioner contends that "the parties' Decree does not address what constitutes a reasonable retirement age, so the trial court reviewed the Decree and reasonably interpreted it."  We construe the petitioner's argument to mean that the stipulation is ambiguous because it does not specify the age at which the respondent's retirement would terminate his alimony obligation.  She asserts that interpreting the agreement as permitting the respondent to retire and stop paying alimony at any time "would result in a meaningless agreement."

The interpretation of the language of a divorce decree, like the interpretation of other written documents, is a question of law, reviewed by this court de novo.  Estate of Frederick v. Frederick, 141 N.H. 530, 531 (1996).  When a dispute arises concerning the nature of provisions within a stipulation, we must consider the intent of the parties.  Miller v. Miller, 133 N.H. 587, 590 (1990).  We consider the intent of the parties as expressed in the language of the stipulation.  Sommers v. Sommers, 143 N.H. 686, 692 (1999).  We look to the plain meaning of the language and at the meaning of the language in the context of the entire decree.  Bonneville v. Bonneville, 142 N.H. 435, 438 (1997).  Absent fraud, duress, mutual mistake, or ambiguity, the parties' intentions will be gleaned from the face of the agreement.  Miller, 133 N.H. at 590.

We agree with the respondent that "retirement from full time employment" is clear and unambiguous.  The intent of the parties, as expressed in the language of the stipulation, was to terminate the respondent's alimony obligation upon his retirement from full-time employment.  There are no qualifiers tying the alimony obligation to age.  The petitioner argues, echoing the trial court's reasoning, that because there is no additional language "such as 'voluntary,' 'at any time,' or 'for any reason,'" "there was no evidence that the parties intended for [the respondent] to be able to retire at any time of his choosing."  We disagree.  The absence of additional language or a specific retirement age does not render the stipulation ambiguous.  Instead, it plainly shows that the parties intended that the respondent's retirement status rather than his age would terminate his alimony obligation.  If the parties had intended to tie alimony to the respondent's age or establish a minimum duration of alimony, they could have done so.

3

The petitioner further asserts that "the generally understood meaning of 'retirement' supports the trial court's interpretation." Citing the amended version of RSA 458:19, she contends that "[r]etirement is generally understood to be equivalent to the Social Security Administration's definition of 'full retirement age.'" See RSA 458:19, IV (Supp. 2022) (defining "[f]ull retirement age" as "the age when the payor is eligible to receive full retirement benefits" under Social Security). We disagree. "[R]etirement from full time employment" connotes one type of retirement. A person may retire from full-time employment and pursue part-time employment. A person may retire and receive Social Security retirement benefits prior to their "full retirement age"; reaching "full retirement age" simply increases the amount of their monthly benefit. See 42 U.S.C. 402(a) (2018); 20 C.F.R. 404.410 (2022). The Social Security Act provides for differing levels of benefits depending on the age at which a person begins collecting benefits, starting as early as age 62. See 42 U.S.C. 402(a); 20 C.F.R. 404.410. Moreover, starting at age 59.5, withdrawals from qualified retirement plans are not taxed as early distributions. 26 U.S.C. 72(t)(2)(A)(i) (2018). There is a range of ages when retirement may be appropriate. The petitioner has failed to provide support for her contention that "retirement from full time employment" is generally understood as the equivalent of reaching the age at which one may collect his full Social Security benefits. Cf. In the Matter of Arvenitis & Arvenitis, 152 N.H. 653, 657 (2005) (observing that 65 is "the normal retirement age" (quotation omitted)). Therefore, we are unpersuaded that the plain meaning of "retirement from full time employment" is "full retirement age" as defined by the Social Security Act, and we determine that the trial court erred in so concluding.

The petitioner also contends that an interpretation that allows the respondent "to determine compliance with his own obligations" would "eviscerate" the parties' stipulation. She points out that, if not obligated until "full retirement age," the respondent "could have ended his alimony obligation by retiring the day after the parties signed their agreement." Nevertheless, these are the terms to which the parties agreed. Both parties were represented by counsel when they agreed to the stipulation. We cannot say that the terms of their agreement, as construed, were necessarily unfair or unreasonable.

The crux of the petitioner's argument is that interpreting the alimony provision as written creates "a manifestly unjust result." Pursuant to RSA 458:14 (2018) and RSA 458:32 (2018), however, a party may request to modify an alimony order. See also RSA 458:19, VII (2018) (allowing for renewal of certain alimony orders in cases where the petition for divorce was filed before January 1, 2019); RSA 458:19-aa (Supp. 2022) (providing procedures for modifying an alimony order in cases where the petition for divorce or legal separation was filed after January 1, 2019). We express no opinion as to whether modification or renewal of alimony is appropriate in this case.

4

Because we find that the trial court erred by "re-affirm[ing]" the respondent's alimony obligations under the stipulated decree, we need not address the respondent's remaining arguments. We reverse and remand.

<u>Reversed and remanded</u>.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**